**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JOSE IZQUIERDO, *individually and on behalf of all others similarly situated*,

    Plaintiff,

v.

PANERA BREAD COMPANY, a/k/a ST. LOUIS BREAD CO.,

    Defendant.

Case No.:

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

---

Plaintiff JOSE IZQUIERDO (herein "Plaintiff IZQUIERDO" or "Plaintiff"), individually and on behalf of all other persons similarly situated, by and through their undersigned attorneys, pursuant to this Class Action Complaint against PANERA BREAD COMPANY, a/k/a ST. LOUIS BREAD CO., alleges the following:

## NATURE OF THE ACTION

1. This is a consumer protection action arising out of deceptive and otherwise improper business practices that PANERA BREAD COMPANY, a/k/a ST. LOUIS BREAD CO., (hereinafter "Panera", "Defendant", or "the Company"), engages in, with respect to the labeling of their Blueberry Bagel (the "Product", as shown in **Exhibit A**). The Product is marketed

extensively throughout the United States, numerous retail stores, and on Defendant's online website.

2. The Product is advertised and sold to mislead consumers into believing that the bagel contains real, healthy blueberries, when in fact the blue pieces in it are mostly dyed lumps predominantly comprised of sugar and flour. *See* **Exhibit B**, showing the Product ingredients. Consumers are misled as to the content of the Product and the Product is misbranded as if it were a high-quality product that simply had real blueberries. Accordingly, the Product violates the New York State laws with the same scope as the Federal Food, Drug, and Cosmetic Act ("FDCA").

3. Imagine a reasonable consumer goes to their local grocery store to buy blueberry juice for its health benefits. The consumer sees a bottle of juice labeled "blueberry juice" and purchases it for consumption. After consumption, the consumer sees on the fine print on the label that the juice that they had bought and consumed was in fact adulterated and diluted with water, sugar, fat, preservatives, and coloring and whatever blueberries the juice contained, it actually only constituted 1% of the juice. The consumer had wished to buy a product that was composed of blueberries and put trust in the manufacturer's labeling that the product was genuine blueberry juice. When the consumer contacts the manufacturer, the manufacturer replies that, on the virtue of constituting 1% of the product, they did not mislead the reasonable consumer, regardless of how diluted or adulterated the blueberry juice content was. In this hypothetical, the reasonable consumer would have been deceived into purchasing a product inferior to the one they had bargained for, based on the labeling of the manufacturer.

4. Imagine another scenario, where a reasonable consumer goes to their local grocery store to buy 2%-fat milk. The reasonable consumer knows that the commonplace term for such a product omits "fat" and labels itself as "2% milk." The consumer sees a product labeled "2% milk" and purchases it for consumption. After consumption, the consumer sees on the fine print on the label that the 2% milk they had bought and consumed was in fact only 2% milk, with the remaining

98% of the product being water, sugar, fat, preservatives, and coloring to imitate 2%-fat milk. The consumer had wished to buy a product containing only 2%-fat milk and put trust in the manufacturer's labeling that the product's use of the commonplace term of "2% milk" to indicate 2%-fat milk. When the consumer contacts the manufacturer, the manufacturer replies that, on the virtue of being true to the words of "2% milk," they had not misled the consumer, regardless of how the consumer had interpreted the manufacturer's labeling. In this hypothetical, the reasonable consumer would still have been deceived into purchasing a product inferior to the one they had bargained for, based on the labeling of the manufacturer.

5. Plaintiff and Class members viewed Defendant's misleading labels, and reasonably relied in substantial part on the representations that it contains blueberries. Plaintiff and Class members were thereby deceived into purchasing a product inferior to the one that they had bargained for.

6. Upon information and belief, Defendant continues to sell the misbranded Product.

7. Plaintiff brings this proposed consumer class action on behalf of himself and all other New York purchasers, who from the applicable limitations period up to and including the present (the "Class Period"), purchased the Product for consumption and not for resale.

8. During the Class Period, Defendant purposely manufactured, marketed and sold the mislabeled Product throughout the United States.

9. Defendant has deceived Plaintiff and other consumers statewide by misbranding their Product, inducing Plaintiff and Class members to reasonably rely on Defendant's misrepresentations, and purchase Product they would not have purchased otherwise. Defendant has collected millions of dollars from the sale of their Product, which they would not have otherwise earned, through these unfair and deceptive practices. Plaintiff brings this action to stop Defendant's misleading practices.

10. Plaintiff does not seek to contest or enforce any state law that has requirements beyond those required by federal laws or regulations.

## JURISDICTION AND VENUE

11. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

12. The Court has personal jurisdiction over Defendant because their Product is advertised, marketed, distributed and sold throughout New York State; Defendant engages in the wrongdoing alleged in this Complaint throughout the United States, including in New York. Defendant is authorized to do business in New York State. Defendant has sufficient minimum contacts with New York and/or otherwise has intentionally availed itself of the markets in New York, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant engages in substantial and not isolated activity within New York.

13. Venue is proper in this district pursuant to 28 U.S.C § 1391(a) and (b) because a substantial part of the events giving rise to Plaintiff IZQUIERDO'S claims occurred in this District, and Defendant is subject to personal jurisdiction in this District. Plaintiff IZQUIERDO purchased Defendant's Product in New York, New York. Moreover, Defendant distributes, advertises and sells the Product, which are the subject of the present Complaint, in this District.

## PARTIES

*Plaintiff*

14. Plaintiff IZQUIERDO is, and at all times relevant hereto has been, a citizen of New York and a resident of Bronx County. On August 10, 2018, Plaintiff IZQUIERDO purchased a Blueberry Bagel Product at a Panera in Manhattan in reliance on label representations that the

bagel contains only real blueberries. Plaintiff IZQUIERDO purchased his Product for the premium price of $1.39.

15. The name "Blueberry" promises to consumers that the Product contains only unadulterated blueberries when it in fact does not. Plaintiff IZQUIERO was injured when he paid to receive a real blueberry bagel but was denied the benefit of his bargain. Plaintiff IZQUIERDO suffered economic harm in an amount up to the full amount of his purchase price because he was denied the benefit of his bargain and did not receive a blueberry bagel at all. The fake blueberry bagel Product was worth far less than what Plaintiff IZQUIERDO paid for it, as he paid a price commensurate with the value of a real blueberry bagel. Should Plaintiff IZQUIERDO encounter the Product in the future, he could not rely on the truthfulness of its representations, absent corrective changes to the packaging.

*Defendant*

16. Defendant PANERA BREAD COMPANY, a/k/a ST. LOUIS BREAD CO., is a national bakery/cafe chain with Company-owned and franchise-operated locations in 46 states, the District of Columbia, and Canada. The Company, organized and existing under the laws of the State of Delaware, also operates under the "Panera Bread®," "Saint Louis Bread Co.®," and "Paradise Bakery & Cafe®" names. Defendant maintains its principal executive offices at 3630 South Geyer Road, Suite 100, St. Louis, Missouri 63127. Panera was acquired by German conglomerate JAB Holding Company in July 2017.

17. Defendant manufactures, packages, distributes, advertises, markets, and sells the misbranded Product to millions of customers nationwide, including New York.

18. Defendant distributes, markets and sells its Product throughout the United States. The labeling, packaging, and advertising for the Product, relied upon by Plaintiff, were prepared and/or approved by Defendant and its agents, and were disseminated by Defendant and its agents through advertising containing the misrepresentations alleged herein. Such labeling, packaging

and advertising were designed to encourage consumers to purchase the Product, and misled the reasonable consumer, i.e. Plaintiff and the Class, into purchasing the Product. Defendant owns, markets and distributes the Product, and creates and/or authorizes the unlawful, fraudulent, unfair, misleading and/or deceptive labeling, packaging and advertising for the Product.

## FACTUAL ALLEGATIONS

### Defendant's Product Is Not a Real Blueberry Product

19. "Blueberry" signifies only one thing: a blueberry. Blueberries possess antioxidant properties that render them beneficial to human health, including effects against cancer, heart disease, and aging.[1]

20. Defendant's "blueberry" bagels feature no plain blueberries. Instead, Defendant uses two ingredients to simulate the "blueberries" in the bagels. The first ingredient is the "blueberry flavored bites" comprised largely of sugar and flour, with added fat, coloring, and flavoring. The composition of the artificial blue bits is as follows:

Blueberry Flavored Bites (Sugar, Enriched Wheat Flour [Wheat Flour, Niacin, Iron, Thiamine Mononitrate, Riboflavin, Folic Acid], Blueberry Solids, Sunflower Oil, Wheat Starch, Dextrose, Colored With Fruit Juice, Natural Flavor, Sodium Bicarbonate),

See **Exhibit B.**

21. The second ingredient in the bagels used to simulate "blueberries" are "infused dried blueberries"; i.e. blueberries to which sugar, blueberry flavor, citric acid (a preservative), and fat have been added:

Infused Dried Blueberries (Wild Blueberries, Cane Sugar, Natural Flavor, Citric Acid, Sunflower Oil),

See **Exhibit B.**

---

[1] James A. Joseph, Barbara Shukitt-Hale, Natalia A. Denisova, Donna Bielinski, Antonio Martin, John J. McEwen and Paula C. Bickford, Journal of Neuroscience, 15 September 1999, 19 (18) 8114-8121; DOI: https://doi.org/10.1523/JNEUROSCI.19-18-08114.1999

22. The FDA requires ingredients to be listed in "descending order of predominance by weight." 21 C.F.R 101.4. The list of sub-ingredients of the ingredient "Blueberry Flavored Bites" indicates that its main ingredients are sugar and flour. The imitation ingredient "Blueberry Flavored Bites" precedes "Infused Dried Blueberries," an ingredient that predominantly feature "wild blueberries" in the Product's ingredient list. This means that the ingredients used to simulate "blueberries" in the Product is more imitation than blueberries.

23. Instead of getting real, healthy blueberries that they expect in their bagels, consumers who purchase the products get surprisingly unhealthy imitation ingredients containing sugar, flour, fat, preservatives, and food coloring that have none of the healthy benefits derived from real wholesome blueberries.

**Federal Law Prohibits Misbranded Foods Such as Defendant's Product**

24. All Federal law, agency regulation, and state law identically prohibit Defendant's misleading labeling practices.

25. Under the FDCA, 21 U.S.C. § 343(c), a food shall be deemed to be misbranded "[i]f it is an imitation of another food, unless its label bears, in type of uniform size and prominence, the word "imitation" and, immediately thereafter, the name of the food imitated." The Product is misbranded regardless of whether or not Defendant intended to mislead consumers: "FDA advises that the term "misleading" does not require any clear implication regarding intent." 58 FR 64123, 64128.

**State Laws Mirror and Incorporate Federal Law and FDA Regulations**

26. Food labeling laws and regulations of the fifty states and the District of Columbia, including New York, impose requirements which mirror and incorporate federal law.

27. Courts have noted the incorporation of FDA regulations into New York law in evaluating claims brought under NY GBL § 349. *See Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG) (RML), 2010 U.S. Dist. LEXIS 73156, at *13 (E.D.N.Y. July 21, 2010) ("New York's

Agriculture and Marketing law similarly provides in relevant part that food shall be deemed misbranded '[i]f its labeling is false or misleading in any particular, and incorporates the FDCA's labeling provisions."); *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697 (CM), 2016 U.S. Dist. LEXIS 149795, at *11 (S.D.N.Y. Oct. 26, 2016) ("Here [in a slack-fill case brought under NY GBL § 349], New York law expressly incorporates the standard imposed by the FDCA."); *N. Am. Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514, 519 (S.D.N.Y. 2013) (evaluating claims under New York Gen. Bus. Law §§ 349 and 350 and finding that "New York law deems any product or label that fails to conform to [New York Agm. Law] definitions 'adulterated' or 'misbranded,' and thus unlawful.").

28. New York State law broadly prohibits the misbranding of food in language identical to that found in regulations promulgated pursuant to the FDCA § 403, 21 U.S.C. 343. New York Agm. Law § 201 specifically provides that "[f]ood shall be deemed to be misbranded . . . If it is an imitation of another food, unless its label bears the word 'imitation' and immediately thereafter the name of the food imitated in type of uniform size and equal prominence, followed by a statement showing the constituents thereof." Moreover, Part 259.1 of Title 1 of the New York Codes, Rules and Regulations of the State of New York (1 NYCRR § 259.1), incorporates by reference the regulatory requirements for food labeling under the FDCA:

> For the purpose of the enforcement of article 17 of the Agriculture and Markets Law, and except where in conflict with the statutes of this State or with rules and regulations promulgated by the commissioner, the commissioner hereby adopts the current regulations as they appear in title 21 of the *Code of Federal Regulations* (revised as of April 1, 2013) … in the area of food packaging and labeling as follows: … (2) Part 100 of title 21 of the *Code of Federal Regulations* [21 C.F.R. 100 *et seq.*], containing Federal definitions and standards for food packaging and labeling *General* at pages 5-10….

1 NYCRR § 259.1(a)(2).

## Defendant's Misleading Packaging Practices Would Deceive, be Material to, and be Relied Upon by a Reasonable Consumer

29. Defendant's misleading packaging practices were material to, and were relied upon, by Plaintiff and the Class. These practices would also be material to, and be relied upon by, a reasonable consumer, since reasonable consumers naturally attach considerable importance to the quality of the product that they believe they are receiving.

30. Plaintiff and the Class did not know, and had no reason to know, that the Product is not a real blueberry bagel, does not contain healthy blueberries, and instead mostly has dyed lumps of mostly sugar, flour, fat, and coloring. Had Plaintiff and Class members known Defendant's Product is not a real blueberry bagel, they would not have bought the Product at the advertised price.

31. Defendant's Product labeling as alleged herein is deceptive and misleading and was designed to increase sales of the Product. Defendant's misrepresentations are part of its systematic Product labeling and packaging practices.

32. Any disclosures, including the posting of the list of ingredients, could not cure Defendant's affirmative misrepresentations that the Product contains blueberries.

## Plaintiff and the Class Were Injured as a Result of Defendant's Misrepresentations

33. As shown above, the Product does not contain any healthy blueberries. Instead, it mostly contains "Blueberry Flavored Bites," whose primary ingredients are "sugar" and "enriched wheat flour."

34. Plaintiff and Class members were thus injured when they paid the full price of the Product and received an inferior Product than what was represented to them by Defendant.

35. Plaintiff and Class members were thus deprived of the benefit of their bargains and injured in an amount up to the purchase price, to be determined by expert testimony at trial.

**Plaintiff Has Reason to Believe Defendant Has an Intent to Mislead**

36. Defendant sells other blueberry products that contain real wholesome blueberries. The ingredient list for Defendant's Blueberry Muffins states that it contains "Fresh Blueberries":

[image of ingredient list showing "Fresh Blueberries, ... Less"]

See **Exhibit C**.

37. Defendant clearly differentiates between "blueberry" ingredients and genuine blueberries in its ingredient lists in their products, marketed as "blueberry products." The use of unadulterated "fresh blueberries" in their muffins makes it clear that Defendant knows the value that consumers place on the use of real wholesome blueberries. The use of the dubious "blueberry flavored bites," which is mainly composed of sugar, flour, fat, preservatives, and food coloring makes it clear that Defendant intends to mislead consumers to place a value on the Product, in a similar way consumers place a value on their other product (i.e. blueberry muffins).

## CLASS ACTION ALLEGATIONS

38. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class:

> All New York purchasers of the Product during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ("New York Class").

39. The proposed Class excludes current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

40. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through the appropriate discovery, Plaintiff believes that there are

Case 1:18-cv-12127-DAB   Document 1   Filed 12/21/18   Page 11 of 20

thousands of members in the proposed Class. Other members of the Class may be identified from records maintained by Defendant and may be notified of the pendency of this action by mail, or by advertisement, using the form of notice similar to that customarily used in class actions such as this.

41. Plaintiff' claims are typical of those of the Class members because Plaintiff and the other Class members sustained damages arising out of the same wrongful conduct, as detailed herein. Plaintiff and other Class members purchased Defendant's Product and sustained similar injuries arising out of Defendant's conduct in violation of Federal and New York law. Defendant's unlawful, unfair, and fraudulent business practices create the same consumer confusion and deception, and thus the same injury, irrespective of where they occurred or were experienced. The injuries of the Class were caused directly by Defendant's unfair and deceptive practices. In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the members of the Class and are based on the same legal theories. Plaintiff will fairly and adequately protect the interests of the members of the Class in that Plaintiff has no interests antagonistic to those of the other members of the Class. Plaintiff have retained experienced and competent counsel.

42. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    i. Whether Defendant labeled, packaged, marketed, advertised and/or sold Product to Plaintiff and Class members, using false, misleading and/or deceptive packaging and labeling;

    ii.    Whether Defendant's actions constitute violations of the consumer protection laws of New York, the other states, and the District of Columbia;

    iii.    Whether Defendant omitted and/or misrepresented material facts in connection with the labeling, ingredients, marketing, advertising and/or sale of Product;

    iv.    Whether Defendant's labeling, packaging, marketing, advertising and/or selling of Product constituted an unfair, unlawful or fraudulent practice;

    v.    Whether, and to what extent, injunctive relief should be imposed on Defendant to prevent such conduct in the future;

    vi.    Whether the members of the Class have sustained damages as a result of Defendant's wrongful conduct;

    vii.    The appropriate measure of damages and/or other relief; and

    viii.    Whether Defendant should be enjoined from continuing their unlawful practices.

43. The Class is readily definable, and prosecution of this action as a Class action will reduce the possibility of repetitious litigation. Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a Class action.

44. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual class member are too small to make it economically feasible for an individual class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

45.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

46.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

47.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all members of the Class, although certain Class members are not parties to such actions.

48.     Defendant's conduct is generally applicable to the Class as a whole and Plaintiff seek, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

### COUNT I.

**INJUNCTION FOR VIOLATIONS OF THE NEW YORK DECEPTIVE AND UNFAIR TRADE PRACTICES ACT  
(New York General Business Law § 349)**  
*(Brought Individually and on Behalf of the New York Class)*

49.     Plaintiff IZQUIERDO realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

50. Plaintiff IZQUIERDO brings this claim individually and on behalf of the other members of the New York Class for an injunction for violations of New York's Deceptive Acts or Practices Law, General Business Law ("NY GBL") § 349.

51. NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

52. Under the New York Gen. Bus. Code § 349, it is not necessary to prove justifiable reliance. ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 . . . claims, it was error. Justifiable reliance by the plaintiff is not an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

53. The practices employed by Defendant, whereby Defendant advertises, promotes, markets, and sells their Product as having blueberries, are unfair, deceptive, misleading, and are in violation of the NY GBL § 349. Moreover, New York State law broadly prohibits the misbranding of foods in language identical to that found in regulations promulgated pursuant to the FDCA § 403, 29 U.S.C. 343(d). Under New York Agm. Law § 201, "[f]ood shall be deemed to be misbranded ... If it is an imitation of another food, unless its label bears the word "imitation" and immediately thereafter the name of the food imitated in type of uniform size and equal prominence, followed by a statement showing the constituents thereof."

54. Any person who has been injured by reason of any violation of the NY GBL § 349 may bring an action in their own name to enjoin such unlawful act or practice, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the Defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

55. The practices employed by Defendant, in which they advertise, promote, and market their Product as a "blueberry" product without a label indicating that it is an imitation product are unfair, deceptive, misleading, and in violation of the NY GBL § 349.

56. The foregoing deceptive acts and practices were directed at consumers.

57. Defendant should be enjoined from marketing the Product as having "blueberries" pursuant to NY GBL § 349.

58. Plaintiff, on behalf of themselves and all others similarly situated, respectfully demands a judgment enjoining Defendant's conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL § 349, and such other relief as this Court deems just and proper.

## COUNT II.

## DAMAGES FOR VIOLATIONS OF THE NEW YORK DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (New York General Business Law § 349)
*(Brought Individually and on Behalf of the New York Class)*

59. Plaintiff IZQUIERDO realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

60. Plaintiff IZQUIERDO brings this claim individually and on behalf of the other members of the New York Class for violations of NY GBL § 349.

61. Any person who has been injured by reason of any violation of NY GBL § 349 may bring an action in their own name to enjoin such unlawful act or practice, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the Defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

62.   By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by misbranding their Product as a blueberry Product, when they mostly contain imitation blueberries.

63.   The practices employed by Defendant, whereby Defendant advertises, promotes, markets, and sells their Product as containing blueberries, are unfair, deceptive, and misleading and are in violation of the NY GBL § 349, New York Agm. Law § 201 and the FDCA, 21 U.S.C. § 343(c) in that said Product are misbranded.

64.   The foregoing deceptive acts and practices were directed at consumers.

65.   Plaintiff IZQUIERDO and the other New York Class members suffered a loss as a result of Defendant's deceptive and unfair trade acts. Specifically, as a result of Defendant's deceptive and unfair acts and practices, Plaintiff IZQUIERDO and the other New York Class members suffered monetary losses associated with the purchase of Product, i.e., receiving an inferior Product than the ones they agreed to purchase. In order for Plaintiff IZQUIERDO and New York Class members to be made whole, they need to receive the value full amount that they paid for the Product.

## COUNT III.

### DAMAGES AND INJUCTIVE RELIEF FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW §§ 350 AND 350-a(1) (FALSE ADVERTISING)

*(brought individually and on behalf of the New York Class)*

66.   This claim is brought on behalf of Plaintiff IZQUIERDO and members of the New York Class against Defendant.

67.   Plaintiff IZQUIERDO and members of the New York Class reallege and incorporate by reference the allegations contained in all preceding paragraphs, and further allege as follows:

68. Defendant is engaged in the "conduct of … business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

69. New York Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity …" N.Y. Gen. Bus. Law § 350-a(1).

70. Defendant caused to be made or disseminated through New York, through advertising, marketing and other publications, statements that were untrue or misleading, and that were known, or which by the exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers and the New York Class.

71. Defendant's affirmative misrepresentations and misrepresentations by way of omission, as described in this Complaint, were material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers purchasing the Product were and continue to be exposed to Defendant's material misrepresentations.

72. Defendant violates N.Y. Gen. Bus. Law § 350 because the misrepresentations and/or omissions regarding the Product, as set forth above, were material and likely to deceive a reasonable consumer.

73. Plaintiff IZQUIERDO and members of the New York Class have suffered an injury, including the loss of money or property, as a result of Defendant's false and misleading advertising. In purchasing the inferior Product, Plaintiff IZQUIERDO and members of the New York Class relied on the misrepresentations and/or omissions relating to the quality of the Product. Those representations were false and/or misleading because the Product were advertised as a blueberry Product but did not contain blueberries, contained blueberry imitation products, and

contained adulterated inferior blueberry products, denying Plaintiff IZQUIERDO and the members of the New York Class the benefit of their bargain.

74. Pursuant to N.Y. Gen. Bus. Law § 350-e, Plaintiff IZQUIERDO and members of the New York Class seek monetary damages (including actual damages and minimum, punitive, or treble and/or statutory damages pursuant to GBL § 350-a(1)), injunctive relief, restitution and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## COUNT IV.

## COMMON LAW FRAUD

*(brought individually and on behalf of the New York Class)*

75. Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

76. Defendant intentionally made materially false and misleading claims through its representations that the Product contains blueberries, intending that Plaintiff and the Class rely on them.

77. Plaintiff and Class members reasonably relied on Defendant's false and misleading representations and omissions. They did not know, and had no reason to know, the truth about the Product as the time they purchased them. They would not have purchased the Product had they known the truth—viz., that they do not contain blueberries.

78. Plaintiff and Class members have been injured as a result of Defendant's fraudulent conduct and must be compensated in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for relief and judgment against Defendant as follows:

a. For an Order certifying the New York Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as a representative of the Class and Plaintiff's attorneys as Class counsel to represent members of the Class;

b. For an Order declaring that Defendant's conduct violates the statutes referenced herein;

c. For an Order finding in favor of Plaintiff and members of the Class;

d. For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

e. For prejudgment interest on all amounts awarded;

f. For an Order of restitution and all other forms of equitable monetary relief;

g. For injunctive relief compelling Defendant to cease representing the Product as containing blueberries;

h. For an Order awarding Plaintiff and members of the Class their reasonable attorneys' fees and expenses and costs of suit; and

i. For such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff, individually and on behalf of all others similarly situated, hereby demands a jury trial on all claims so triable.

DATED: December 21, 2018

        **LEE LITIGATION GROUP, PLLC**

        By: ___/s/ *C.K. Lee*_____
             C.K. Lee, Esq.

        C.K. Lee (CL 4086)
        Anne Seelig (AS 3976)
        30 East 39th Street, Second Floor
        New York, NY 10016
        Telephone: (212) 465-1188
        Facsimile: (212) 465-1181
        *Attorneys for Plaintiff and the Class*