**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JOSE IZQUIERDO, *individually and on behalf of all others similarly situated*,

       Plaintiff,

       v.

PANERA LLC,

       Defendant.

Case No.: 18-cv-12127-DAB

**FIRST AMENDED CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

---

Plaintiff JOSE IZQUIERDO ("Plaintiff IZQUIERDO" or "Plaintiff"), individually and on behalf of all other persons similarly situated, by and through his undersigned attorneys, pursuant to this Class Action Complaint against PANERA LLC ("Panera," or "Defendant"), alleges the following:

## <u>NATURE OF THE ACTION</u>

1.    This is a consumer protection action seeking redress for, and a stop to, Defendant's false and misleading business practices with respect to the marketing and sale of its Blueberry Bagel (the "Product"). The Product is sold extensively throughout New York State in Defendant's numerous retail stores.

2.      At all relevant times, Defendant has formulated, manufactured, marketed, and sold the Product under the name of "Blueberry Bagel."

3.      However, unbeknownst to consumers, the Blueberry Bagel contains only trace amounts of real blueberries. In fact, the Product contains a far greater proportion of imitation blueberry ingredients—in the form of so-called "Blueberry Flavored Bites"—that deceive reasonable consumers into believing that the Product contains more authentic blueberries than it actually does.

4.      Defendant has strategically inserted these imitation blueberry ingredients in the Product to deceive consumers into believing that the Blueberry Bagel contains a non-negligible quantity of blueberries.

5.      Even to the extent that the Product contains real blueberries ("Wild Blueberries"), they are but one sub-ingredient of the "Infused Dried Blueberries" included in the Product, along with "Cane Sugar, Natural Flavor, Citric Acid, [and] Sunflower Oil." *See* **Exhibit A** (displaying the Product's ingredients).

6.      Because the Product contains merely a trace amount of real blueberry ingredients, it is misleading for Defendant to label, market, or otherwise represent to consumers the Product as a "Blueberry Bagel."

7.      Plaintiff IZQUIERDO viewed Defendant's misleading in-store advertisements and labeling for the Product, and was reasonably misled into believing that the Blueberry Bagel contained a non-negligible quantity of blueberries. However, Plaintiff later discovered that the Product contains only trace amounts of real blueberry ingredients. Plaintiff was therefore deceived into purchasing a product inferior to the one he believed he had bargained for.

8.      Upon information and belief, Defendant continues to sell the misbranded Product.

9.      Plaintiff brings this proposed consumer class action on behalf of himself and all other New York purchasers (the "Class"), who from the applicable limitations period up to and

including the present (the "Class Period"), purchased the Product for consumption and not for resale.

10.     During the Class Period, Defendant purposely manufactured, marketed, and sold the mislabeled Product throughout New York State.

11.     Defendant has deceived Plaintiff and the Class by misbranding its Product, inducing Plaintiff and the Class to reasonably rely on Defendant's misrepresentations and deceptive omissions, and thereby purchase a Product they would not have purchased had they known the true composition of the Product's ingredients. Defendant has collected millions of dollars from the sale of its Product, which it would not have accrued but for its unfair and deceptive business practices concerning the Product. Plaintiff brings this action to stop these practices.

## JURISDICTION AND VENUE

12.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

13.     The Court has personal jurisdiction over Defendant because its Product is advertised, marketed, distributed and sold throughout New York State; Defendant engages in the wrongdoing alleged in this Complaint throughout New York State. Defendant is authorized to do business in New York State. Defendant has sufficient minimum contacts with New York and/or otherwise has intentionally availed itself of the markets in New York, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant engages in substantial and not isolated activity within New York.

14.     Venue is proper in this district pursuant to 28 U.S.C § 1391(a) and (b) because a substantial part of the events giving rise to Plaintiff IZQUIERDO'S claims occurred in this District, and Defendant is subject to personal jurisdiction in this District. Plaintiff IZQUIERDO

purchased Defendant's Product in New York, New York. Moreover, Defendant distributes, advertises and sells the Product, which are the subject of the present Complaint, in this District.

## PARTIES

*Plaintiff*

15.     Plaintiff IZQUIERDO is, and at all relevant times to this action, has been a citizen of New York State, residing in Bronx County. On August 8, 2018, Plaintiff IZQUIERDO purchased a Blueberry Bagel for $1.39 at Panera Store number 1571, located at 452 5th Avenue, New York, New York 10018. Plaintiff IZQUIERDO purchased the Blueberry Bagel reasonably relying on Defendant's representations that it was a genuine blueberry bagel. Had Plaintiff known that the Product in fact contains only trace amounts of blueberries, he would not have considered it a blueberry bagel and would not have purchased it, or would have paid significantly less for it. Plaintiff therefore suffered injury in fact and lost money as a result of Defendant's misleading, fraudulent, and deceptive practices, as described herein. After Plaintiff learned that the Blueberry Bagel contained only a negligible quantity of blueberries, he ceased purchasing and consuming the Product. Should Plaintiff encounter the Product in the future, he could not rely on the truthfulness of Defendant's representations regarding the Product, absent corrective changes to the Product's ingredients.

*Defendant*

16.     Defendant PANERA LLC is a national bakery/cafe chain with company-owned and franchise-operated locations in the United States, including New York State, and Canada. Panera, organized and existing under the laws of the State of Delaware, also operates under the "Panera Bread®," "Saint Louis Bread Co.®," and "Paradise Bakery & Cafe®" names. Defendant maintains its principal executive offices at 3630 South Geyer Road, Suite 100, St. Louis, Missouri 63127. Panera was acquired by German conglomerate JAB Holding Company in July 2017.

17.     Defendant manufactures, advertises, markets, distributes, and sells the misbranded Product to consumers residing in New York.

18.     The advertising and labeling for the Product, relied upon by Plaintiff IZQUIERDO and the Class, were prepared and/or approved by Defendant and its agents, and were disseminated by Defendant and its agents through advertising containing the misrepresentations alleged herein. Such advertising and labeling were designed to encourage consumers to purchase the Product, and misled reasonable consumers, including Plaintiff and the Class, into purchasing the Product.

## FACTUAL ALLEGATIONS

### I.   Defendant's Product Is Misleadingly Represented as a "Blueberry Bagel"

19.     Defendant markets and sells the Product over the counter at its company-owned and franchise-operated store locations. The Product sold in-store by Defendant is displayed in a basket on a wall behind the counter, alongside its other bagel varieties. Affixed to the basket containing the Product is a placard which simply reads, "Blueberry," along with the number of calories (340) for the Product.

20.     These baskets are located just below a sign which reads, "Food You Can Trust: We're advocates for clean food. We're committed to menu transparency. We're dedicated to having a positive impact on the food system." *See* **Exhibit B**.

21.     Despite Defendant's professed "commit[ment] to menu transparency," the ingredient list for the Product is not displayed in-store. Were it displayed, consumers would see that the "Blueberry Bagel" is not what it purports to be, as many food-commentators have recognized.

22.    For example, *Fooducate.com*—which serves as a "personal grocery advisor, helping people make healthy food choices for their families"[1]—notes that Panera's Blueberry Bagel contains only a "[t]iny amount of real fruit," and goes on to state "[d]on't let marketing tricks . . . fool you into thinking this is a fruity product."[2] In the same vein, *The Huffington Post* observed:

> While Panera's blueberry muffins . . . contain actual berries, according to the ingredients list, the bagels are a different story. They contain "blueberry-flavored bits [*sic*]" made of sugar, flour, corn syrup and food coloring and, further on down the ingredients list, "infused blueberries." Presumably, these start as real berries, but become a Frankenstein-ish mashup of sugar, natural flavor and sunflower oil.[3]

23.    Defendant's deceptive practices are part of a wave of blueberry fraud taking place across the country. *The Los Angeles Times* reported that a "range of fake blueberries are in a number of retail food items that contains labels or photos suggesting real blueberries were used in the products."[4] The article notes that "[t]he offenders are well-known manufacturers . . . and the fakes were found in bagels, cereals, breads and muffins. Some products contain real blueberries mixed with fakes."[5]

24.    Likewise, *SheKnows.com*, a leading women's lifestyle website,[6] observed that "[i]f you look at the ingredient list of your favorite breakfast treat and it doesn't say plain old 'blueberries,' chances are what you're eating is fake. Under names like 'blueberry pieces,' 'blueberry powder,' and 'blueberry crunchlets' lurk what's usually just a combination of sugar,

---

[1] *See Our Story*, FOODEDUCATE, https://www.fooducate.com/community/post/Our%20Story/57A305CE-4393-83CC-42FE-AD22B6B937F7 (last visited May 28, 2019).
[2] *Panera Blueberry Bagel*, FOODEDUCATE,
https://www.fooducate.com/product/Panera%20Bread%20Blueberry%20Bagel/58234313-9BBE-9D0F-4BDC-9D68074C84CA (last visited May 28, 2019).
[3] *Sorry, But Turns Out Your Favorite Blueberries May Be Entirely Fake*, HUFFPOST (Oct. 29, 2017),
https://www.huffpost.com/entry/fake-blueberry-breakfast-foods_n_6016288 (last visited May 28, 2019).
[4] *Fake Blueberries Abound in Food Products*, L.A. TIMES (Jan. 20, 2011), https://www.latimes.com/health/la-xpm-2011-jan-20-la-heb-fake-blueberries-20110120-story.html (last visited May 28, 2019).
[5] *Id.*
[6] *Profile Previews – SheKnows Media*, PITCHBOOK, https://pitchbook.com/profiles/company/55789-57 ("SheKnows Media: Operator of a leading women's lifestyle digital media company. The company operates a group of media properties that include SheKnows.com, BlogHer.com, StyleCaster.com and HelloFlo.com . . . .") (last visited May 28, 2019).

starch and blue dye."[7] Extra Crispy, a website that focuses on "breakfast, brunch, and morning culture,"[8] wrote "[a]lternative facts strike again, and this time they're coming for our blueberries. That blueberry granola bar you munched on this morning is very likely flavored with fake blueberries. In fact, the wrinkly so-called fruit pieces in your cereal, muffins, and bagels may not have anything in common with fruit at all."[9]

25.     While these journalists warned consumers to examine the ingredient lists of purported blueberry products, in-store purchasers of the Product have no such option, as the ingredients are not presented to them.

26.     Below is the Product's full ingredients statement:

Enriched Flour (Wheat Flour, Malted Barley Flour, Niacin, Reduced Iron, Thiamine Mononitrate, Riboflavin, Folic Acid), Water, **Blueberry Flavored Bites** (Sugar, Enriched Wheat Flour [Wheat Flour, Niacin, Iron, Thiamine Mononitrate, Riboflavin, Folic Acid], Blueberry Solids, Sunflower Oil, Wheat Starch, Dextrose, Colored With Fruit Juice, Natural Flavor, Sodium Bicarbonate), Brown Sugar, **Infused Dried Blueberries** (Wild Blueberries, Cane Sugar, Natural Flavor, Citric Acid, Sunflower Oil), Salt, Dough Improver (Malted Wheat Flour, Enriched Wheat Flour [Niacin, Reduced Iron, Thiamine Mononitrate, Riboflavin, Folic Acid], Inactivated Yeast, Acerola Extract, Fungal Enzymes), Yeast (Yeast, Sorbitan Monostearate, Ascorbic Acid).

*See* **Exhibit A** (emphases added).

27.     Defendant's Blueberry Bagel contains only trace amounts of real blueberries. The primary imitation blueberry ingredients found in the Product are so-called "Blueberry Flavored Bites."

28.     To the extent that the Product contains real blueberries, they come in the form of "Wild Blueberries"; but even these are merely a sub-ingredient[10] of the "Infused Dried

---

[7] *Love Blueberries? Careful, They Might Be Fake*, SHEKNOWS.COM (Mar. 31, 2017), https://www.sheknows.com/food-and-recipes/articles/1133162/fake-blueberries/ (last visited May 28, 2019).

[8] *Extra Crispy*, LETSGETLOST.TODAY, https://www.letsgetlost.today/website/extra-crispy (last visited May 28, 2019).

[9] *The Blueberries in Your Breakfast Are Probably Fake*, EXTRA CRISPY (Feb. 7, 2018), https://www.myrecipes.com/extracrispy/the-blueberries-in-your-breakfast-are-probably-fake (last visited May 28, 2019).

[10] For an overview statement by the FDA regarding "sub-ingredients," see LABELING COURSE SUMMARY – COURSE OVERVIEW, FDA, https://www.accessdata.fda.gov/ORAU/Labeling/LAB_summary.htm ("Ingredient listings cannot list items under vague terms like, 'Meat' or 'Seafood' . . . . all sub-ingredients must also be listed. A product that lists ketchup as an ingredient could be declared, 'ketchup (tomatoes, vinegar, sugar, salt)' in order to comply to the law.") (citing 21 C.F.R. § 101.4(b) ("The name of an ingredient shall be a specific name and not a collective (generic) name").

Blueberries" found in the Product, alongside "Cane Sugar, Natural Flavor, Citric Acid [a known preservative],[11] [and] Sunflower Oil."

29.     The "Blueberry Flavored Bites" and the "Infused Dried Blueberries" ingredients constitute the sum total of all blueberry-related ingredients in the Product.

30.     As shown above, "Blueberry Flavored Bites" appear before "Infused Dried Blueberries" on the Product's ingredients label. Therefore, the Product contains, by weight, more imitation (*i.e.*, "Blueberry Flavored Bites") than actual (*i.e.*, "Wild Blueberries," a sub-ingredient of the "Infused Dried Blueberries") blueberry ingredients.[12]

31.     Although Defendant may insist that its Blueberry Bagel does contain *some* real blueberries, it does not follow that the Product is incapable of being misleading when its actual blueberry content runs afoul of reasonable consumer expectations—as evidenced by the journalistic exposes quoted above. It is well established that an advertisement, "though literally true" may still be actionable if it is nonetheless "likely to mislead and confuse consumers." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 475 F. Supp. 2d 299, 305 (S.D.N.Y. 2007) (quoting *McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.*, 938 F.2d 1544, 1548–49 (2d Cir. 1991)).

32.     Such an argument from Defendant would be akin to the Sunny Delight Beverages Company claiming that its staple product, SunnyD, is an orange juice beverage because it contains at least some real fruit juice. Yet such a representation would be patently deceptive to consumers. Despite its ostensible orange coloration, SunnyD contains less than 2% real orange juice.[13] What SunnyD is to orange juice, so the Product is to real blueberry bagels.

---

[11] *See, e.g.*, *Top 10 Most Common Ingredients in Fast Food*, HOWSTUFFWORKS, https://recipes.howstuffworks.com/10-ingredients-fast-food1.htm ("10 Citric Acid: The Most Common Preservative") (last visited May 28, 2019).
[12] *See* 21 C.F.R § 101.4(a)(1) ("Ingredients required to be declared on the label or labeling of a food . . . shall be listed by common or usual name in descending order of predominance by weight.").
[13] *See Tangy Original*, SUNNYD, https://sunnyd.com/product/tangy-original/ (providing ingredients list stating, "Contains: Water, High Fructose Corn Syrup and 2% or less of each of the following: Concentrated Juices (Orange, Tangerine, Apple, Lime, Grapefruit, Pear), Citric Acid . . . .") (last visited May 28, 2019).

33.     The Product's composition is not accepted industry practice. Even low-cost, supermarket-shelf blueberry bagels contain only real blueberry ingredients. For example, the only blueberry-related ingredient found in Abe's "The Blueberry" Bagel are "Organic Blueberries." In fact, these authentic, organic blueberries are the third most prevalent ingredient behind "Wheat Flour" and "Water," respectively. *See* **Exhibit C**.

34.     Even the Archer Farms brand blueberry bagels sold at Target retail stores are more authentic than Defendant's Product. *See* **Exhibit D**. The ingredients statement shows that the Archer Farms blueberry bagel does not contain imitation blueberry ingredients akin to "Blueberry Flavored Bites" or the like. Rather, the only blueberry-related ingredient that these bagels contain is "Dried Blueberries." *See id*.

## II.     Defendant's Misleading Representations and Deceptive Omissions Are Material to, Would Deceive, and Would be Relied Upon by a Reasonable Consumer

35.     A reasonable consumer would expect a blueberry bagel sold at a bakery-café that stresses its healthfulness and authenticity to contain more real blueberries than its low-cost, supermarket-shelf counterparts.

36.     Plaintiff IZQUIERDO and the Class reasonably relied on Defendant's material misrepresentations and omissions when purchasing the Product.

37.     **Materiality**: The health benefits of blueberries are well-documented.[14] Consumers are willing to pay a premium price to avail themselves of the well-known health benefits of blueberries.

---

[14] *See, e.g.*, *10 Proven Health Benefits of Blueberries*, HEALTHLINE (Oct. 9, 2018) https://www.healthline.com/nutrition/10-proven-benefits-of-blueberries ("Blueberries are sweet, nutritious and wildly popular. Often labeled a superfood, they are low in calories and incredibly good for you.") (last visited May 28, 2019); *see also Everything You Need to Know about Blueberries*, MEDICAL NEWS TODAY (Sept. 5, 2017), https://www.medicalnewstoday.com/articles/287710.php ("[Blueberries] have been shown to protect against heart disease and cancer, and can also help maintain bone strength, mental health, and healthful blood pressure.") (last visited May 28, 2019); *20 Evidence-Based Health Benefits of Blueberries*,

38.     Plaintiff IZQUIERDO and the Class were no exception when they affirmatively decided to purchase the Blueberry Bagel on the reasonable expectation that the product would contain a non-negligible quantity of its titular, healthy ingredient: blueberry—and certainly not an imitation thereof.

39.     **Deception**: Defendant's misrepresentations and omissions regarding the Product are deceptive because Plaintiff and the Class reasonably expect that a food item labeled, marketed, and sold under the name "Blueberry Bagel" contains more than a trace amount of real blueberries. Yet this is just the deceptive type of practice in which Defendant engaged when it labeled, represented, and sold the Product to Plaintiff and the Class as such.

40.     Up to the point of sale, the Product appears as though its blueberry ingredients are all authentic.

41.     Defendant deceptively omits the Product's ingredients statement at the point of sale.

42.     Even upon purchasing and closely inspecting the Product, a reasonable consumer cannot discern the imitation from the actual blueberry ingredients.

43.     It was reasonable for consumers to expect genuine blueberry bagels at an establishment like Panera, since Panera in fact offers genuine blueberry muffins (the "Blueberry Muffin"). *See* **Exhibit E**.

44.     The only blueberry-related ingredient found in Panera's Blueberry Muffin are "Fresh Blueberries." These Fresh Blueberries are neither a sub-ingredient, nor are comprised of any sub-ingredients. *See id*. This contrasts with the Product's "Wild Blueberries," which are

---

ORGANIC FACTS (May 21, 2019), https://www.organicfacts.net/health-benefits/fruit/health-benefits-of-blueberries.html ("Blueberries are packed with antioxidants and phytonutrients which have powerful health benefits. These include the ability to reduce DNA damage, prevent aging, control cholesterol levels, and may prevent cancer.") (last visited May 28, 2019); *7 Stunning Reasons You Should Eat Blueberries Every Day*, FOOD REVOLUTION NETWORK (May 16, 2018), https://foodrevolution.org/blog/are-blueberries-good-for-you/ ("Eating blueberries regularly helps fend off heat disease, cancer, brain aging, and much more . . . . Blueberries pack huge health benefits . . . .") (last visited May 28, 2019).

merely a sub-ingredient of the "Infused Dried Blueberries," along with "Cane Sugar, Natural Flavor, Citric Acid, [and] Sunflower Oil." *See* **Exhibit A**.

45.     A consumer would have no reason to suspect that only Panera's Blueberry Muffin, but not its Blueberry Bagel—each displayed within a few feet of the other—is genuine.[15]

46.     The inference that the Blueberry Bagel is genuine is particularly reasonable given that it is sold directly under Panera's signage which reads, "Food you can trust: We're advocates for clean food. We're committed to menu transparency." *See* **Exhibit B**.

47.     **Reliance**: Plaintiff and the Class reasonably relied upon Defendant's misleading representations and deceptive omissions regarding the Product. As discussed above, Defendant did not disclose to Plaintiff the Product's ingredients up to and through the point of sale, yet at the same time represented that it was and is committed to menu transparency. Furthermore, up to and through the point of sale, Plaintiff could not visually confirm that the Product contained only trace amounts of real blueberries. Therefore, in reliance on Defendant's material misrepresentations and omissions regarding the Blueberry Bagel, Plaintiff was deceived into purchasing what he believed to be a genuine Blueberry Bagel.

---

[15] Defendant's deceptive act of including only real blueberries in the Blueberry Muffin but not the Blueberry Bagel also conflicts with its Food Policy:

> Commitment #1: Clean Ingredients. Evaluating all of our ingredients as a step in the journey of offering a "cleaner" menu. Quite often, the simpler the ingredient, the better it tastes. We look at what's in as well as what's not in our menu labels. To us, clean and simple go together.

*Panera Bread's Food Policy Statement*, PANERA, *available at* https://www.panerabread.com/content/dam/panerabread/documents/nutrition/panera-bread-food-policy.pdf (last visited May 28, 2019).

The imitation blueberry ingredients ("Blueberry Flavored Bites") found in the Product—which literally outweigh the trace amounts of authentic blueberry ingredients in the Product so as to deceive consumers into believing that the Product contains more real blueberries than it actually does—can hardly be said to be either "clean" or "simple." This owes to the fact the Blueberry Flavored Bites are comprised of a sizeable list of unhealthy sub-ingredients, including sugar and dextrose.

### III.   Plaintiff and the Class Were Injured By Defendant's Misleading Representations and Deceptive Omissions

48.   As a result of Defendant's deceptive conduct as alleged herein, Plaintiff was injured when he paid money for the Blueberry Bagel which did not deliver the qualities it promised, namely, that the Product sold as a "Blueberry Bagel" contain more than a non-negligible quantity of real, healthy blueberries—its defining ingredient.

49.   Plaintiff paid the advertised price for the Product on the assumption that he was purchasing a bagel that contained a non-trivial amount of real, healthy blueberries.

50.   Plaintiff would not have been willing to pay this sum had he known that the truth regarding the Product's ingredient composition.

51.   Defendant therefore delivered a Product with significantly less value than it warranted, thereby depriving Plaintiff of the benefit of his bargain, and injuring him in an amount up to the purchase price, to be determined by expert testimony at trial.

### IV.   Defendant Intended to Mislead Consumers

52.   Defendant, at all relevant times to this action, was aware of consumer interest and expectations regarding healthy ingredients like real blueberries. Indeed, the very slogan under which the Product was and continues to be sold states that Defendant is an "advocate[] for clean food," and "committed to menu transparency." *See* **Exhibit B**.

53.   However, the Product as sold to Plaintiff and the Class was not "clean food," since it contained more imitation than real blueberry ingredients. *See* **Exhibit A**.

54.   The fact that Defendant fails to provide consumers with the Product's ingredient statement at the point of sale reveals that Defendant is not actually committed to menu transparency.

55. These deceptive acts and omissions by Defendant are compounded by the additional fact that no reasonable consumer at the point of sale can visually discern that the Product contains only a trace amount of authentic blueberries. Even upon purchasing and performing a close visual inspection the Product, a reasonable consumer cannot discern the imitation from the real blueberry ingredients.

56. Defendant further intended to mislead Plaintiff and the Class by selling the Product in close proximity to the Blueberry Muffin, where only the latter contains authentic blueberry ingredients.

57. Defendant has therefore misrepresented and deceptively omitted crucial information regarding the Product to Plaintiff and the Class such that Defendant has manifested an intent to mislead Plaintiff and the Class.

## CLASS ACTION ALLEGATIONS

58. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class:

> All persons who purchased the Product in New York State during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ("New York Class").

59. The proposed Class excludes current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

60. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through the appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Class. Other members of the Class may be identified from records maintained by Defendant and may be notified of the pendency of this action by mail, or

by advertisement, using the form of notice similar to that customarily used in class actions such as this.

61.     Plaintiff' claims are typical of those of the Class members because Plaintiff and the other Class members sustained damages arising out of the same wrongful conduct, as detailed herein. Plaintiff and other Class members purchased Defendant's Product and sustained similar injuries arising out of Defendant's conduct in violation of New York law. Defendant's unlawful, unfair, and fraudulent business practices create the same consumer confusion and deception, and thus the same injury, irrespective of where they occurred or were experienced. The injuries of the Class were caused directly by Defendant's unfair and deceptive practices. In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the members of the Class and are based on the same legal theories. Plaintiff will fairly and adequately protect the interests of the members of the Class in that Plaintiff has no interests antagonistic to those of the other members of the Class. Plaintiff has retained experienced and competent counsel.

62.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

> i.     Whether Defendant labeled, marketed, advertised and/or sold Product to Plaintiff and Class members, using false, misleading and/or deceptive packaging and labeling;

> ii.     Whether Defendant's actions constitute violations of the consumer protection laws of New York;

> iii.     Whether Defendant omitted and/or misrepresented material facts in connection with the labeling, ingredients, marketing, advertising and/or sale of Product;

iv.   Whether Defendant's labeling, packaging, marketing, advertising and/or selling of Product constituted an unfair, unlawful or fraudulent practice;

v.   Whether, and to what extent, injunctive relief should be imposed on Defendant to prevent such conduct in the future;

vi.   Whether the members of the Class have sustained damages as a result of Defendant's wrongful conduct;

vii.   The appropriate measure of damages and/or other relief; and

viii.   Whether Defendant should be enjoined from continuing their unlawful practices.

63.   The Class is readily definable, and prosecution of this action as a Class action will reduce the possibility of repetitious litigation. Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a Class action.

64.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual class member are too small to make it economically feasible for an individual class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

65.   The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

66.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

67.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all members of the Class, although certain Class members are not parties to such actions.

68.     Defendant's conduct is generally applicable to the Class as a whole and Plaintiff seek, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

## COUNT I.

## INJUNCTION FOR VIOLATIONS OF THE NEW YORK DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (New York General Business Law § 349)

### *(Brought Individually and on Behalf of the New York Class)*

69.     Plaintiff IZQUIERDO realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

70.     Plaintiff IZQUIERDO brings this claim individually and on behalf of the other members of the New York Class for an injunction for violations of New York's Deceptive Acts or Practices Law, General Business Law ("NY GBL") § 349.

71.     NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

72.     Under the New York Gen. Bus. Code § 349, it is not necessary to prove justifiable reliance. ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 . . . claims, it was error. Justifiable reliance by the plaintiff is not an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co*., 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

73.     The practices employed by Defendant, whereby Defendant advertises, promotes, markets, and sells its Product as a "Blueberry Bagel" are unfair, deceptive, misleading, and are in violation of the NY GBL § 349. Moreover, New York State law broadly prohibits the misbranding of foods in language identical to that found in regulations promulgated pursuant to the FDCA § 403, 29 U.S.C. 343(d). Under New York Agm. Law § 201, "[f]ood shall be deemed to be misbranded . . . If it is an imitation of another food, unless its label bears the word "imitation" and immediately thereafter the name of the food imitated in type of uniform size and equal prominence, followed by a statement showing the constituents thereof."

74.     Any person who has been injured by reason of any violation of the NY GBL § 349 may bring an action in their own name to enjoin such unlawful act or practice, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the Defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

75.     The practices employed by Defendant, in which they advertise, promote, and market their Product as a "Blueberry Bagel" without a label indicating that it is an imitation product are unfair, deceptive, misleading, and in violation of the NY GBL § 349.

76.     The foregoing deceptive acts and practices were directed at consumers.

77.     Defendant should be enjoined from marketing the Product as a "Blueberry Bagel" pursuant to NY GBL § 349.

78.     Plaintiff, on behalf of themselves and all others similarly situated, respectfully demands a judgment enjoining Defendant's conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL § 349, and such other relief as this Court deems just and proper.

## COUNT II.

## DAMAGES FOR VIOLATIONS OF THE NEW YORK DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (New York General Business Law § 349)

*(Brought Individually and on Behalf of the New York Class)*

79.     Plaintiff IZQUIERDO realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

80.     Plaintiff IZQUIERDO brings this claim individually and on behalf of the other members of the New York Class for violations of NY GBL § 349.

81.     Any person who has been injured by reason of any violation of NY GBL § 349 may bring an action in their own name to enjoin such unlawful act or practice, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the Defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

82.     By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by misbranding their Product as a "Blueberry Bagel," since it contains only trace amounts of real blueberries.

83.     The practices employed by Defendant, whereby Defendant advertises, promotes, markets, and sells its Product are unfair, deceptive, and misleading and are in violation of the NY GBL § 349 in that said Product are misbranded.

84.     The foregoing deceptive acts and practices were directed at consumers.

85.     Plaintiff IZQUIERDO and the other New York Class members suffered a loss as a result of Defendant's deceptive and unfair trade acts. Specifically, as a result of Defendant's deceptive and unfair acts and practices, Plaintiff IZQUIERDO and the other New York Class members suffered monetary losses associated with the purchase of Product, *i.e.*, receiving an inferior Product than the ones they agreed to purchase. In order for Plaintiff IZQUIERDO and New York Class members to be made whole, they need to receive an amount up to the purchase price they paid for the Product.

## COUNT III.

## DAMAGES AND INJUCTIVE RELIEF FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW §§ 350 AND 350-a(1) (FALSE ADVERTISING)

### *(brought individually and on behalf of the New York Class)*

86.     This claim is brought on behalf of Plaintiff IZQUIERDO and members of the New York Class against Defendant.

87.     Plaintiff IZQUIERDO and members of the New York Class reallege and incorporate by reference the allegations contained in all preceding paragraphs, and further allege as follows:

88.     Defendant is engaged in the "conduct of . . . business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

89.     New York Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of . . . representations [made] with respect to the commodity . . . ." N.Y. Gen. Bus. Law § 350-a(1).

90.     Defendant caused to be made or disseminated throughout New York State, by its advertising, marketing, and other publications, statements that were untrue or misleading, and that were known, or which by the exercise of reasonable care should have been known to Defendant, to be untrue and misleading to Plaintiff and the Class.

91.     Defendant's affirmative misrepresentations and deceptive omissions, as described in this Complaint, were material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers purchasing the Product were and continue to be exposed to Defendant's material misrepresentations.

92.     Defendant violates N.Y. Gen. Bus. Law § 350 because the misrepresentations and/or omissions regarding the Product, as set forth above, were material and likely to deceive a reasonable consumer.

93.     Plaintiff IZQUIERDO and members of the New York Class have suffered an injury, including the loss of money or property, as a result of Defendant's false and misleading advertising. In purchasing the inferior Product, Plaintiff IZQUIERDO and members of the New York Class relied on the misrepresentations and/or omissions relating to the quality of the Product. Those representations were false and/or misleading because the Product was advertised as a "Blueberry Bagel," but contained only a trace amount of real blueberries, and in fact contained a greater quantity of unhealthy, imitation blueberry ingredients intended to deceive consumers into believing that the Product contained more real blueberries than it actually does, thereby denying Plaintiff IZQUIERDO and the members of the New York Class the benefit of their bargain.

94.     Pursuant to N.Y. Gen. Bus. Law § 350-e, Plaintiff IZQUIERDO and members of the New York Class seek monetary damages (including actual damages and minimum, punitive, or treble and/or statutory damages pursuant to GBL § 350-a(1)), injunctive relief, restitution, and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## COUNT IV.

## COMMON LAW FRAUD

### *(brought individually and on behalf of the New York Class)*

95.     Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

96.     Defendant intentionally made materially false and misleading claims through its representations that the Product is a "Blueberry Bagel," intending that Plaintiff and the Class rely on them.

97.     Plaintiff and Class members reasonably relied on Defendant's false and misleading representations and omissions. They did not know, and had no reason to know, the truth about the Product at the time of purchase. They would not have purchased the Product had they known the truth regarding the Product's ingredient composition.

98.     Plaintiff and the Class have been injured as a result of Defendant's fraudulent conduct and must be compensated in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff IZQUIERDO, on behalf of himself and all others similarly situated, prays for relief and judgment against Defendant as follows:

a.  For an Order certifying the New York Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as a representative of the Class and Plaintiff's attorneys as Class counsel to represent members of the Class;

b.  For an Order declaring that Defendant's conduct violates the statutes referenced herein;

c.  For an Order finding in favor of Plaintiff and members of the Class;

d.  For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

e.  For prejudgment interest on all amounts awarded;

f.  For an Order of restitution and all other forms of equitable monetary relief;

g.  For injunctive relief compelling Defendant to cease representing the Product as a "Blueberry Bagel";

h.  For an Order awarding Plaintiff and members of the Class their reasonable attorneys' fees and expenses and costs of suit; and

i.  For such other and further relief as the Court deems just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff, individually and on behalf of all others similarly situated, hereby demands a jury trial on all claims so triable.


DATED: May 31, 2019


**LEE LITIGATION GROUP, PLLC**

By: _____ /s/ *C.K. Lee* _____
        C.K. Lee, Esq.

C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Telephone: (212) 465-1188
Facsimile: (212) 465-1181
*Attorneys for Plaintiff and the Class*