**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- x

JOSE IZQUIERDO, *individually and on*
*behalf of all others similarly situated*,

                                  Case No. 18-cv-12127-DAB

            Plaintiff,

        v.

PANERA LLC,

            Defendant.

-------------------------------------------------------- x

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181

*Attorneys for Plaintiff and the Class*

# <u>TABLE OF CONTENTS</u>

Table of Authorities…………………………………...……………………………………………… ii

Introduction………….…………………………………………...………………………… 1

Argument………………………………………………...………………………………… 2

    I.    Plaintiff Has Adequately Alleged That a Reasonable Consumer Would be Misled by Defendant's Misrepresentations………………………………………………...…….……. 2

        A.  Defendant Mischaracterized Plaintiff's Allegations…………………………………. 4

        B.  Defendant Mischaracterized *Solak v. Hain Celestial Grp., Inc.*…………………………5

        C.  Defendant's Argument Ignores Reasonable Consumer Expectations Regarding Blueberry Bagels Specifically...……………………………………………………7

        D.  Defendant's Citation to *Solak* Ignores that In-Store Consumers are Not Presented with an Ingredients Statement……………………………………………………10

        E.  Defendant Ignores that the Garden Veggie Straws in *Solak* Contains Many More Vegetables than Panera's Blueberry Bagels Contains Blueberries..………………...12

    II.    Plaintiff Has Adequately Pled Injury……………………….……..……………………..………...14

    III.    Plaintiff's Fraud Claim Is Adequately Pled………………...…...………………….…...16

    IV.    Plaintiff has Standing to Seek Injunctive Relief………..…………….......................... 17

Conclusion……..…………………………………………………………….…………... 20

# TABLE OF AUTHORITIES

Cases

*Ackerman v. Coca-Cola Co.*,
  2013 U.S. Dist. LEXIS 184232, 2013 WL 7044866 (E.D.N.Y. July 17, 2013) ...................... 18

*Belfiore v. Procter & Gamble Co.*,
  F. Supp. 3d 440 (E.D.N.Y. 2014).................................................................................. 3,18

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................................ 2

*Bowring v. Sapporo U.S.A., Inc.*
  234 F. Supp. 3d 386, 390 (E.D.N.Y. 2017)..................................................................... 2

*Consumer Fin. Prot. Bureau v. RD Legal Funding, LLC*,
  332 F. Supp. 3d 729 (S.D.N.Y. 2018) ............................................................................ 16

*Daniel v. Mondelez Int'l, Inc.*,
  17-CV-00174, 2018 U.S. Dist. LEXIS 31074 (E.D.N.Y. Feb. 26, 2018)................................ 15

*Delgado v. Ocwen Loan Servicing Company, LLC*,
  2014 U.S. Dist. LEXIS 135758, 2014 WL 4773991 (E.D.N.Y. Sept. 23, 2014)...................... 18

*Fortyune v. American Multi-Cinema, Inc.*,
  2002 U.S. Dist. LEXIS 27960, 2002 WL 32985838 (C.D. Cal. Oct. 22, 2002)....................... 19

*Grabowski v. Dunkin' Brands, Inc.*
  2017 U.S. Dist. LEXIS 201468; 2017 WL 6059966 (N.D. Ill. Dec. 7, 2017) ................... 11, 12

*Greene v. Gerber Prods. Co.*
   262 F. Supp. 3d 38, 69 (E.D.N.Y. 2017).......................................................................... 15

*Henderson v. Gruma Corp.*,
  2011 U.S. Dist. LEXIS 41077, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011)........................ 19

*Koehler v. Litehouse, Inc.*,
  2012 U.S. Dist. LEXIS 176971, 2012 WL 6217635 (N.D. Cal. Dec. 13, 2012) ..................... 18

*Maurizio v. Goldsmith*
  230 F.3d 518, 521 (2d Cir. 2000) .................................................................................... 2

*MBIA Ins. Co. v. GMAC Mortg. LLC*,
  914 N.Y.S.2d 604 (Sup. Ct. 2010) .................................................................................. 17

*McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.*, 938 F.2d 1544, 1548–49 (2d Cir. 1991).......... 6

*Orlander v. Staples, Inc.*,
  802 F.3d 289 (2d Cir. 2015) ...................................................................................... 2, 15

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*
    85 N.Y.2d 20, 25 (1995) ................................................................................................. 3

*Raines v. Byrd*,
    521 U.S. 811 (1997) ..................................................................................................... 18

*Ries v. Ariz. Bevs. USA LLC*,
    287 F.R.D. 523 (N.D. Cal. 2012) ............................................................................... 19

*Rodriguez v. It's Just Lunch, Int'l*,
    No. 07 Civ. 9227(SHS)(KNF), 2010 WL 685009 (S.D.N.Y. Feb. 23, 2010) .......................... 14

*Romero v. Flowers Bakeries, LLC*,
    14-CV-5189, 2016 U.S. Dist. LEXIS 15868, 2016 WL 469370 (N.D. Cal. Feb. 8, 2016) ........ 6

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994) ......................................................................................... 17

*Small v. Lorillard Tobacco Co*.,
    94 N.Y.2d 43 (1999) ..................................................................................................... 14

*Solak v. Hain Celestial Grp., Inc.*
    No. 3:17-CV-0704 (LEK/DEP), 2018 WL 1870474, 2018 U.S. Dist. LEXIS 64270 (N.D.N.Y.
    Apr. 17, 2018) ............................................................................................... 5, 6, 10, 11

*Suarez v. Cal. Nat. Living, Inc.*,
    2019 U.S. Dist. LEXIS 34634 (S.D.N.Y. Mar. 4, 2019) ............................................... 2

*Time Warner Cable, Inc. v. DIRECTV, Inc.* 475 F. Supp. 2d 200, 305 (S.D.N.Y. 2007) .............. 6

## Statutes

NY GBL § 349 ................................................................................................................. *passim*

NY GBL § 350 ................................................................................................................. *passim*

NY GBL § 350-a(1)………………………………………………………………………………*passim*

## Rules

Fed. R. Civ. P. 9(b) ......................................................................................................... 18

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 2

## INTRODUCTION

Plaintiff JOSE IZQUIERDO ("Plaintiff IZQUIERDO," or "Plaintiff") hereby respectfully submits this Memorandum of Law in Opposition to Defendant PANERA LLC's ("Defendant," or "Panera") Motion to Dismiss the First Amended Class Action Complaint. On December 21, 2018, Plaintiff brought a Class Action Complaint seeking redress for, and a stop to, Defendant's unfair and deceptive practices regarding the advertising, marketing, and sale of Panera's blueberry bagel product (the "Blueberry Bagel," or the "Product"). On May 31, 2019, Plaintiff filed an Amended Complaint ("Am. Compl."). On June 14, 2019, Defendant served its Motion to Dismiss the Amended Complaint ("Def. Mot."), which Plaintiff here opposes.

In reliance on Defendant's label misrepresentations that the Product is a "Blueberry Bagel," Plaintiff purchased the Product for personal consumption. However, the Product contains only a negligible quantity of real blueberries. In fact, the Product is comprised of more imitation than authentic blueberry ingredients, which come in the form of so-called "Blueberry Flavored Bites." Had Plaintiff and other reasonable consumers known that the Blueberry Bagel contains only a trace amount of authentic blueberry ingredients, they would not have purchased the Product, since they would not have deemed it a real blueberry bagel. Defendant's bakery-café locations do not provide their customers with an ingredients statement that could clarify the actual contents of the Product. The deception is reinforced by the fact that the fraudulent "Blueberry Bagel" is placed in close proximity to Defendant's Blueberry Muffins, which contain a non-negligible quantity of real blueberries and lead reasonable consumers to suppose that the Product provides the same.  It is also reinforced by point-of-sale signage that reads: "Food you can trust: We're advocates for clean food. We're committed to menu transparency." *See* Am. Compl. **Exhibit B**.

Defendant Panera has unlawfully exploited consumer confusion by profiting from the sales

of its deceptively labeled Blueberry Bagels. Plaintiff and the Class were therefore injured when they were deceived into purchasing a product whose value as delivered was substantially less than its value as warranted.

To prevail on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), Plaintiff need only assert factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The plaintiff's claim for relief must be "plausible on its face," *id*. at 570, and a complaint fails if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). However, "[t]he plausibility standard [on a motion to dismiss] is not akin to a probability requirement." *Iqbal*, 129 S. Ct. at 1937. A plaintiff must only "nudge" his or her allegations "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 548.

## ARGUMENT

### I. Plaintiff Has Adequately Alleged That a Reasonable Consumer Would be Misled by Defendant's Misrepresentations

To establish a prima facie claim under GBL § 349 or § 350, a plaintiff plausibly must allege "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Suarez v. Cal. Nat. Living, Inc.*, 2019 U.S. Dist. LEXIS 34634 *1, *17 (S.D.N.Y. Mar. 4, 2019) (declining to dismiss plaintiff's class action claims under GBL §§ 349–50) (quoting *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)). A defendant's conduct is materially misleading if it "would mislead 'a reasonable consumer acting reasonably under the circumstances.'" *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 390 (E.D.N.Y. 2017) (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)). In determining whether conduct is materially misleading, courts assess "each allegedly misleading statement in light of its context on the product label or advertisement as a whole,"

contemplating "the entire mosaic . . . rather than each tile separately." *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 53 (E.D.N.Y. 2015) (internal quotation marks and citations omitted). This is an "objective inquiry" which is "typically unsuited to resolution at the pleading stage." *Suarez*, 2019 U.S. Dist. LEXIS 34634 at *17 (citing *Bowring*, 234 F. Supp 3d at 390).

Defendant does not address, and therefore does not dispute, the first element of Plaintiff's claims brought under GBL §§ 349–50—*i.e.*, whether Defendant's deceptive acts were directed at consumers. However, for the sake of completeness, Plaintiff here notes that the allegations set forth in the Complaint satisfy this element. In *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, the New York Court of Appeals held that "[c]onsumer-oriented conduct does not require a repetition or pattern of deceptive behavior . . . . instead [a plaintiff] must demonstrate that the acts or practices have a broader impact on consumers at large." 85 N.Y.2d 20, 25 (1995). At Complaint ¶ 11, Plaintiff IZQUIERDO effectively alleged that Defendant's deceptive acts and practices "have a broader impact on consumers at large," particularly because Defendant has unlawfully profited from consumers' lack of awareness regarding the true composition of the Product's ingredients:

> Defendant has deceived Plaintiff and the Class by misbranding its Product, inducing Plaintiff and the Class to reasonably rely on Defendant's misrepresentations and deceptive omissions, and thereby purchase a Product they would not have purchased had they known the true composition of the Product's ingredients. Defendant has collected millions of dollars from the sale of its Product, which it would not have accrued but for its unfair and deceptive business practices concerning the Product. Plaintiff brings this action to stop these practices.

Defendant argues that Plaintiff has failed to satisfy the second and third elements of GBL §§ 349–50 claims regarding the materially misleading nature of the "Blueberry Bagel" label and the resulting economic injury to Plaintiff and the Class. However, Defendant's arguments are unavailing, as any reasonable consumer would be misled into believing that the Product is a genuine blueberry bagel. And given the value that consumers attach to blueberries, the value of

the Product as received was less than the value of the Product as warranted. Therefore, Plaintiff and the Class suffered economic injury.

### A.  Defendant Mischaracterized Plaintiff's Allegations

As a preliminary matter, Defendant has misrepresented Plaintiff's position in stating that "Plaintiff's argument appears to be that the label 'Blueberry Bagel' is misleading because, in Plaintiff's opinion, the bagel does not contain 'genuine' blueberries." Def. Mot. at 7 (quoting Am. Compl. ¶ 15). Nowhere in the Amended Complaint does Plaintiff allege that the Product's *blueberries* are not genuine. Instead, Plaintiff consistently alleged that Panera's *Blueberry Bagel*, the very Product at issue in this case, is not genuine: "Plaintiff IZQUIERDO purchased the Blueberry Bagel reasonably relying on Defendant's representations that it was a *genuine blueberry bagel.* Am. Compl. ¶ 15 (emphasis added); *see also* Am. Compl. ¶ 43 ("It was reasonable for consumers to expect genuine blueberry bagels at an establishment like Panera, since Panera in fact offers genuine blueberry muffins."); Am. Compl. ¶ 46 ("The inference that the Blueberry Bagel is genuine is particularly reasonable given that it is sold directly under Panera's signage which reads, 'Food you can trust: We're advocates for clean food. We're committed to menu transparency.'").

After misattributing to Plaintiff the claim that the Product does not contain "'genuine' blueberries," Defendant goes on to state, "[h]owever, Plaintiff admits that the Blueberry Bagel contains two ingredients that contain blueberry: 'Infused Dried Blueberries,' which contain 'Wild Blueberries' as the first ingredient and 'Blueberry Flavored Bites' which, contain 'Blueberry Solids.'" Def. Mot. at 7–8 (citing Am. Compl. ¶ 26). This, too, is a misrepresentation of Plaintiff's position, as Plaintiff additionally maintained throughout the Amended Complaint that the Product, at most, contains *only one* authentic blueberry ingredient—Wild Blueberries, a sub-ingredient of the Product's "Infused Dried Blueberries"—but also "a far greater proportion of *imitation*

4

blueberry ingredients—in the form of so-called 'Blueberry Flavored Bites'—that deceive consumers into believing that that Product contains more authentic blueberries than it actually does." Am. Compl. ¶ 3 (emphasis added); *see also* Am. Compl. ¶ 27 ("Defendant's Blueberry Bagel contains only trace amounts of real blueberries. The *primary imitation blueberry ingredients* found in the Product are so-called 'Blueberry Flavored Bites.'") (emphasis added).

Defendant is therefore simply incorrect to suggest that Plaintiff somehow "admits that the Blueberry Bagel contains two ingredients that contain blueberry: [Wild Blueberries and Blueberry Solids]." Def. Mot. at 7–8. If anything, a question that is immediately ripe for discovery is whether the "Blueberry Solids" are in fact comprised, in any part, of real blueberries. Notably, while Defendant has attempted to fabricate an "admission" by Plaintiff that the Blueberry Solids are an authentic blueberry ingredient, Defendant, for its part, utterly fails to address whether this is in fact the case. Defendant's silence with respect to this issue suggests that the Blueberry Solids are entirely an imitation ingredient. The fact that these Blueberry Solids are a sub-ingredient of the "Blueberry Flavored Bites" suggests that they are an imitation ingredient, since they are "Blueberry *Flavored*." In any event, this issue can only be resolved through discovery.

### B.  Defendant Mischaracterized *Solak v. Hain Celestial Grp., Inc.*

Defendant charges that "Plaintiff fails to state a claim under GBL §§ 349 and 350 because no reasonable consumer would find the Blueberry Bagel labeling to be misleading or deceptive." Def. Mot. at 7. Defendant rests its entire analysis upon *Solak v. Hain Celestial Grp., Inc.*, No. 3:17-CV-0704 (LEK/DEP), 2018 WL 1870474, 2018 U.S. Dist. LEXIS 64270 (N.D.N.Y. Apr. 17, 2018). However, Defendant's reliance on this case is misplaced for a number of reasons, chief among which is that *Solak* does *not* stand for the broad proposition which Defendant attempts to extract from it. Defendant claims that "[*Solak*] illustrates that a product name cannot be misleading

where it is factually accurate." Def. Mem. at 7. Tellingly, Defendant does not quote language to this effect from *Solak*, but has instead merely offered its tendentious interpretation of the case, alongside some cherry-picked quotes.

That *Solak* does not stand for this broad principle is demonstrated by the opinion itself: "[a]lthough '*a representation need not be false to mislead a reasonable consumer*, the representation must nevertheless be misleading or ha[ve] the capacity, likelihood or tendency to deceive or confuse members of the public.'" *Solak*, 2018 U.S. Dist. LEXIS 64270 at *11 (quoting *Romero v. Flowers Bakeries, LLC*, No. 14-CV-5189, 2016 U.S. Dist. LEXIS 15868, 2016 WL 469370, at *7 (N.D. Cal. Feb. 8, 2016) (emphasis added). *See also* Am. Compl. ¶ 31 ("It is well established that an advertisement, 'though literally true' may still be actionable if it is nonetheless 'likely to mislead and confuse consumers.'") (citing *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 475 F. Supp. 2d 200, 305 (S.D.N.Y. 2007) (quoting *McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.*, 938 F.2d 1544, 1548–49 (2d Cir. 1991))). Therefore, Defendant cannot rely on *Solak* to support the claim that "Blueberry [Bagel]" cannot be misleading so long as the Product contains any iota of blueberries.

Taken to its logical extreme, Defendant's reading of *Solak* entails that a product could be marketed and sold under the name of "carrot cake" where the entire cake contains one shred of a carrot; "ginseng tea" could be represented as such despite the tea containing one drop of ginseng extract; or indeed, as Plaintiff noted in the complaint, and as Defendant has failed to address, SunnyD could be viewed as orange juice, notwithstanding that it contains less than 2% fruit juice. *See* Am. Compl. ¶ 11 ("Such an argument from Defendant would be akin to the Sunny Delight Beverages Company claiming that its staple product, SunnyD, is an orange juice beverage because it contains at least some real fruit juice. Yet such a representation would be patently deceptive to

consumers. Despite its ostensible orange coloration, SunnyD contains less than 2% real orange juice.").

In each of these examples, it is "factually accurate" to state that the products contain carrot, ginseng, and fruit juice, respectively, but the miniscule quantities of those ingredients makes it entirely misleading to then call those products carrot cake, ginseng tea, and orange juice. Clearly, then, *Solak* cannot stand for the broad, untenable proposition that "a product name cannot be misleading where it is factually accurate." Def. Mem. at 7. Were it so, food and beverage manufacturers would have open license to develop, market, and sell all manner of deceptively-named products so long as they contained a modicum of the named ingredient.

### C. Defendant's Argument Ignores Reasonable Consumer Expectations Regarding Blueberry Bagels Specifically

In addition to misattributing an absurd principle of law to *Solak*, Defendant fails to address reasonable consumer expectations regarding blueberry bagels in particular; and relatedly, how those expectations patently differ from consumer expectations regarding the product at issue in *Solak*—a synthetic, chip-like packaged good marketed and sold as veggie straws.

Plaintiff IZQUIERDO's allegation that the Product does not reasonably qualify as a genuine blueberry bagel is not idiosyncratic. As set forth in the complaint, this observation is consistent with those of neutral food commentators with no stake in this litigation. *See* Am. Compl. ¶ 22–24. *Fooducate.com*[1] observed that Panera's Blueberry Bagel contains only a "[t]iny amount of real fruit," and *The Huffington Post* came to the very same conclusion:

> While Panera's blueberry muffins . . . contain actual berries, according to the ingredients list, the bagels are a different story. They contain "blueberry-flavored bits [*sic*]" made of sugar, flour, corn syrup and food coloring and, *further on*

---

[1] *Panera Blueberry Bagel*, FOODUCATE,
https://www.fooducate.com/product/Panera%20Bread%20Blueberry%20Bagel/58234313-9BBE-9D0F-4BDC-9D68074C84CA.

> *down the ingredients list*, "infused blueberries." Presumably, these start as real
> berries, but become a Frankenstein-ish mashup of sugar, natural flavor and
> sunflower oil.[2]

Am. Compl. ¶ 22.

These insights from food commentators, in conjunction with the allegations set forth by Plaintiff and the Class, highlight the fact that when consumers seek out blueberry bagels, they reasonably expect that it contains a non-trivial amount of its titular ingredient: blueberries. That is, a reasonable consumer would have no reason to suspect that a product marketed and sold as a "Blueberry Bagel" would contain more artificial than authentic blueberry ingredients. Consumers naturally care about and seek out these real blueberry ingredients for their well-known health benefits—as cannot be said of the veggie straws at issue in *Solak. See* Am. Compl. ¶ 37 n.14 (listing sources discussing the health benefits of blueberries).

Nowhere in its Motion to Dismiss does Defendant engage the issue of what consumers reasonably expect when purchasing their Blueberry Bagel, or any other brand of blueberry bagel— when everything turns on just this question. Instead, Defendant tries to glibly apply its reading of *Solak* to the instant action. But consumer expectations concerning a packaged veggie straws product markedly differ from those regarding a blueberry bagel. Consumers reasonably expect veggie straws to involve some synthetic manufacturing process that transmogrifies vegetables into a chip or "straw" form utterly devoid of nutrients. But they expect a bagel sold in a basket simply labeled "Blueberry" to be substantially comprised of authentic blueberries rich in nutrients.

The Complaint adduces two other bagel brands—Abe's Bagels and Archer Farms—as illustrations of what consumers reasonably expect to find in blueberry bagels. Defendant rejects these apt comparisons on entirely spurious grounds.

---

[2] *Sorry, But Turns Out Your Favorite Blueberries May Be Entirely Fake*, HUFFPOST (Oct. 29, 2017), https://www.huffpost.com/entry/fake-blueberry-breakfast-foods_n_6016288) (emphasis added).

Defendant argues that Abe's bagels cannot illustrate reasonable consumer expectations because they are sold in supermarkets in New Zealand and Australia.  *See* Def. Mot. at 7 n.6. Abe's, however, explains on its website that its bagels are specifically designed to reflect *American* bagel standards:

> Delicious bagels, made the authentic way . . . . It all started when Megan and Brent discovered the humble bagel. *They jetted over to the US on a stop-at-nothing mission to learn everything they could about bagels*. They learnt from some of the world's best, who taught them the ultimate way to mix and proof the dough . . . .[3]

> Way back in '96, a couple of Kiwi's Megan Sargent and Brent Milburn, rock up *in the USA* on a Bagel pilgrimage. *The mission—to learn the art of Bagel making. They learnt everything there was to know about bagels from the best*. . . .The early mornings, burnt fingers and lessons *in America* were definitely worth it. With bellies and heads full of Bagel love, Megan and Brent arrive back in New Zealand and the ABE'S Bagel Bakery is born.[4]

Clearly, the manufacturers of Abe's Bagels have had in-depth experience and exposure to the manufacture and sale of bagels in American markets. Therefore, Abe's "The Blueberry" bagel is surely probative of reasonable consumer expectations regarding blueberry bagels made and sold in the United States.

Consistent with this experience and understanding of consumer expectation regarding bagels in general, and blueberry bagels in particular, Abe's caters to this expectation by including a substantial amount of real blueberries in its product, with "Wheat Flour, Water, [and] Organic Blueberries" comprising Abe's blueberry bagel's three primary ingredients. *See* Am. Compl. **Exhibit C**.

Defendant argues that the Archer Farms brand blueberry bagel cannot be used to highlight the deficiencies of the Product because both contain similar ingredients and are therefore

---

[3] *Our Story*, ABE'S BAGELS, https://abesbagels.co.nz/our-story (emphasis added).
[4] *Our Story*, ABE'S BAGELS, http://abesbagels.co.nz.s204105.gridserver.com/our-story/ (emphases added).

"extremely similar." Def. Mot. at 8 n.6. The "Dried Blueberries" found in the Archer Farms product is comprised of "Blueberries, Sugar, [and] Sunflower," while Panera's "Infused Dried Blueberries" include the sub-ingredients "Wild Blueberries, Cane Sugar, Natural Flavor, Citric Acid, Sunflower Oil." Yet Defendant's argument ignores the very different *quantities* of these ingredients found in their respective products, which speaks directly to Plaintiff's point.

The Dried Blueberries found in the Archer Farms blueberry bagel appear much earlier in the ingredients statement than do the Product's Infused Dried Blueberries. *Compare* Am. Compl. **Exhibit D** (listing ingredients of the Archer Farms blueberry bagel) *with* Am. Compl. ¶ 26 (listing ingredients of Panera's Product). Whereas the Archer Farms blueberry bagel contains Dried Blueberries as its third major ingredient, the Infused Dried Blueberries only appear as the fifth major ingredient in the Product. Hence, the Dried Blueberries in Archer Farms' product constitute, by weight, a greater amount of that blueberry bagel than the Infused Dried Blueberries in Panera's Product. Furthermore, the Archer Farms blueberry bagel does not include imitation blueberry ingredients, such as Panera's Blueberry Flavored Bites. Therefore, Plaintiff has soundly alleged that the Archer Farms blueberry bagel—a mere supermarket shelf product—is "more authentic" than Panera's Product.

### D. Defendant's Citation to *Solak* Ignores that In-Store Consumers are Not Presented with an Ingredients Statement

Defendant conveniently fails to acknowledge that the facts of *Solak* are readily distinguishable from the instant case. The product at issue in *Solak* was sold in packaging that included an ingredients statement; by contrast, the Blueberry Bagel is offered by Defendant in a point of sale transaction at Panera's bakery-cafes, with no ingredients disclosure.

The *Solak* court observed that "Defendant packages the Straws in a bag (the "Packaging")
. . . ." 2018 U.S. Dist. LEXIS 64270 at *3, adding that "[t]he *ingredient list, which is located on*

*the back of the Packaging*, *indicates that the Straws' five most abundant ingredients by weight* are potato starch, potato flour, corn starch, tomato paste, and spinach powder (the "Primary Ingredients") . . . ." *Id.* at \*\*3–4. However, no such ingredients statement is made available to consumers at Panera's point of sale.[5] The fact that Panera's Blueberry Bagel is sold at a point of sale transaction, and not in product packaging, clearly distinguishes it from *Solak*. *See Grabowski v. Dunkin' Brands, Inc.*, 2017 U.S. Dist. LEXIS 201468 at \*\*5–6; 2017 WL 6059966 (N.D. Ill. Dec. 7, 2017) ("[Plaintiff] has not based his claims on the prominence of any written statement at the point of sale or on any product container . . . . This case [] does not involve product packaging much less a focus on one aspect of a product packaging in isolation.").[6]

Relying on *Solak*, Defendant argues at Note 4 that "[t]o the extent that there is anything ambiguous about the labeling of the Blueberry Bagel—which there is not—the ingredient list is sufficient to dispel any confusion." However, a major distinguishing fact from *Solak* as compared to the instant case is that the Garden Veggie Straws were sold in packaging that included an ingredients statement on the back of the packaging—which *Solak* concluded could dispel any consumer confusion. Plaintiff, however, has alleged, and Defendant has not disputed, that "[d]espite Defendant's professed 'commitment to menu transparency,' the ingredient list for the Product is not displayed in-store. Were it displayed, consumers would see that the 'Blueberry Bagel' is not what it purports to be, as many food-commentators have recognized." Am. Compl. ¶

---

[5] Defendant attempts to rebut this claim at note 5 of its Motion to Dismiss: "Panera provides [the Product's ingredients statement] in a transparent way on its website and in its bakery-cafes. Therefore, it could not mislead a reasonable consumer about the Blueberry Bagel's ingredients." Yet accessing a product's ingredients statement online is patently different from simply flipping over a packaged product and readily examining its ingredients statement. Furthermore, Defendant provides absolutely no detail as to where its ingredients statements for the Product are supposedly made available to consumers "in its bakery-cafes." Notably, Defendant does not assert that such an ingredients statement is provided to consumers at Panera's point of sale in its bakery-cafes.
[6] *See also id.* at \*7: "In addition, although [defendant] claims that the information on its website is 'provided' to consumers on its website, there are no allegations in the pleadings that any information from the website is affirmatively 'provided' to consumers or that when purchasing products consumers are advised that they can visit the website for certain information."

21. Unlike the plaintiffs in *Solak*, Plaintiff IZQUIERDO and the Class did not, and do not, have the opportunity to examine the Product's packaging at the point of sale, and in particular the ingredients statement, because the Product has no such packaging.

As noted in the Amended Complaint, Defendant's deception is further facilitated by the fact that its Blueberry Bagel is sold in close proximity to its Blueberry Muffin, a genuine blueberry product that contains "Fresh Blueberries" as its only blueberry-related ingredient. So reasonable consumers will mistakenly assume that "Blueberry" means the same thing in both cases. *See* Am. Compl. **Exhibit E** (displaying list of the Blueberry Muffin's ingredients); *see also* Am. Compl. ¶ 45 ("A consumer would have no reason to suspect that only Panera's Blueberry Muffin, but not its Blueberry Bagel—each displayed within a few feet of the other—is genuine."); *Grabowski v. Dunkin' Brands, Inc.*, 2017 U.S. Dist. LEXIS 201468 at *6 (the fact that Dunkin's blueberry donut, which was comprised of imitation blueberry ingredients, was sold "in proximity of products with real blueberries to those with fake blueberries could possibly be relevant" in evaluating whether a defendant's acts are deceptive to reasonable consumers).

When thus viewing Panera's advertisement for the Product in context—that is, at the point of sale, without reference to an ingredients statement, but nonetheless displayed under signage imploring consumers to trust its "commitment to menu transparency" and in close proximity to a genuine blueberry pastry—it is clear that it would mislead reasonable consumers, and did in fact mislead Plaintiff IZQUIERDO and the Class into believing that they were purchasing a genuine blueberry bagel.

### E.  Defendant's Argument Ignores that the Garden Veggie Straws in *Solak* Contained Many More Vegetables than Panera's Blueberry Bagel Contains Blueberries

The *Solak* court observed that "[n]o such capacity, likelihood, or tendency [to deceive] exists in the present case, given that the 'VEGETABLE AND POTATO SNACK' descriptor *fairly*

and *accurately* describes *the most prevalent ingredients used to manufacture the Straws*." 2018 WL 1870474 at **11–12 (emphasis added). By contrast, the Infused Dried Blueberries in the Product cannot "fairly and accurately" be described as one of the Blueberry Bagel's "prevalent" ingredients. A comparison of the respective ingredients statements makes this evident:

> **Veggie Garden Straws**:
>
> Veggie Straws (**Potato Starch**, **Potato Flour**, **Corn Starch**, **Tomato Paste**, **Spinach Powder**, Salt, Potassium Chloride, Sugar, Beetroot Powder [Color], Turmeric, Canola Oil and/or Safflower Oil and/or Sunflower Oil, Sea Salt). *See id.* at *4.
>
> **Panera's Blueberry Bagel**:
>
> Enriched Flour (Wheat Flour, Malted Barley Flour, Niacin, Reduced Iron, Thiamine Mononitrate, Riboflavin, Folic Acid), Water, Blueberry Flavored Bites (Sugar, Enriched Wheat Flour [Wheat Flour, Niacin, Iron, Thiamine Mononitrate, Riboflavin, Folic Acid], Blueberry Solids, Sunflower Oil, Wheat Starch, Dextrose, Colored With Fruit Juice, Natural Flavor, Sodium Bicarbonate), Brown Sugar, **Infused Dried Blueberries** (**Wild Blueberries**, Cane Sugar, Natural Flavor, Citric Acid, Sunflower Oil), Salt, Dough Improver (Malted Wheat Flour, Enriched Wheat Flour [Niacin, Reduced Iron, Thiamine Mononitrate, Riboflavin, Folic Acid], Inactivated Yeast, Acerola Extract, Fungal Enzymes), Yeast (Yeast, Sorbitan Monostearate, Ascorbic Acid). *See* Am. Compl. ¶ 26.

Plaintiff IZQUIERDO alleged that the *only* authentic blueberry ingredient in the Blueberry Bagel comes in the form of "Wild Blueberries"—a sub-ingredient of the "Infused Dried Blueberries" found in the Product. *See* Am. Compl. ¶ 28. Whereas the *Solak* court reasonably concluded that there was nothing misleading about calling the Garden Veggie Straws a "vegetable and potato snack" because, *inter alia*, vegetables comprised the Garden Veggie Straws' most prevalent ingredients by weight, the same cannot be said for the Wild Blueberries in the Blueberry Bagel. As the above comparison of ingredients illustrates, the Wild Blueberries are found much lower on the Product's ingredients statement as compared to the vegetables found in the Garden Veggie Straws. Indeed, the Wild Blueberries only appear after a myriad of other ingredients and

13

sub-ingredients. In contrast to the vegetables found in the Garden Veggie Straws, the Wild Blueberries are a negligible ingredient.

## II. **Plaintiff Has Adequately Pled Injury**

Defendant argues that Plaintiff fails to plead a cognizable injury because a deception cannot be "both act and injury." Def. Mot. at 9 (citing *Rodriguez v. It's Just Lunch, Int'l*, No. 07 Civ. 9227(SHS)(KNF), 2010 WL 685009 at *9 (S.D.N.Y. Feb. 23, 2010) (quoting *Small v. Lorillard Tobacco Co., Inc.*, 94 N.Y.2d 43, 56 (1999))). However, Defendant's argument betrays a fundamental misunderstanding of *Small v. Lorillard Tobacco Co.* and its progeny. *Small* simply held that deception *alone* does not constitute an injury. There, plaintiffs alleged that "defendants used deceptive commercial practices to sell their cigarettes to New Yorkers and that they would not have bought these cigarettes had they known that nicotine is an addictive drug." *Id.* at 51. Yet the only injury alleged was "that defendants' deception prevented them from making free and informed choices as consumers." *Id.* at 56. This is manifestly not Plaintiff's argument in the instant action. Plaintiff's injury was not that Defendant prevented him from making the free and informed choice of whether to purchase the Product, but that the actual value of his purchase was *less* than the value warranted by Defendant's representations. *See, e.g.*, Am. Compl. ¶ 51 ("Defendant [] delivered a Product with significantly less value than it warranted, thereby depriving Plaintiff of the benefit of his bargain, and injuring him an amount up to the purchase price, to be determined by expert testimony at trial."). This is why Plaintiff was financially injured. The injury was not to his free will, but to his pocketbook.

Defendant claims that Plaintiff was not injured because "every Panera bagel sold in Manhattan—even the Plain Bagel—is sold for exactly the same price." Def. Mot. at 10. However, price comparison are not an element of injury under NY GBL. *See Greene v. Gerber Prods. Co.*,

262 F. Supp. 3d 38, 69 (E.D.N.Y. 2017) ("[T]o the extent that *Izquierdo* [*v. Modelez Int'l, Inc.*, No. 16-CV-04697, 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016)] holds, as Defendant suggests, that Plaintiff must identify a precisely comparable product in order to allege a GBL section 349 or 350 claim under a price premium theory, *Izquierdo* contradicts the weight of the law in this Circuit. Courts routinely allow complaints that lack allegations of both cheaper and exactly comparable products to survive motions to dismiss.").

Plaintiff additionally notes that there is no "price premium" requirement under New York's consumer protection statutes. *See Orlander*, 802 F.3d at 302. ("Defendant argues that New York courts have recognized the payment of a plaintiff's purchase price as a Section 349 injury only when the plaintiff paid a 'price premium.' But there is no such rigid 'price premium' doctrine under New York law.")  Moreover, the price premium theory of injury is entirely inapplicable to the instant action. "In most price premium cases, the alleged misrepresentation conveys to consumers that the product at issue contains a unique, desirable quality. . . In most cases, 'price premium' should thus be observable through an increased price in comparison to products without the desirable quality." *Daniel v. Mondelez Int'l, Inc.*, 17-CV-00174, 2018 U.S. Dist. LEXIS 31074, at *31 (E.D.N.Y. Feb. 26, 2018). Yet this is not applicable to every case of consumer fraud. For example, a consumer who believed he was purchasing an automobile but actually received only the hollow exterior of an automobile without an engine and other components that allow a car to actually run would not plead a "price premium" but rather demand the return of the entire purchase price.  This is because an engine is not "a unique, desirable quality" that merely augments the value of an already valuable product. Rather, it goes to the essence of what a car is, because a car's entire value depends on it.

The same holds true of Defendant's misrepresentations regarding the Blueberry Bagel. They go to the essence of what the Product is supposed to be, the source of its entire value. Such is proven by the fact that the misrepresentation inheres in the Product's very labeling, "Blueberry." Consumers who are seeking out blueberries, but do not receive the promised blueberries, have been deprived of the benefit of their bargain—as is illustrated by *The Huffington Post* article[7] describing the disappointment that blueberry enthusiasts experience upon learning the truth about the product. A consumer who found himself deceived in this manner would not be consoled by the fact that other bagels are sold for the same price.

Defendant also argues that Plaintiff's allegation that the Product as delivered was worth significantly less value than it warranted is "merely a threadbare allegation." Def. Mot. at 10. Plaintiff, however, has substantiated this allegation by referencing the articles by food commentators noting widespread blueberry fraud, such as *The Huffington Post* article, as well as highlighting consumer interest in the healthful qualities of blueberries.[8]

### III. <u>Plaintiff's Fraud Claim Is Adequately Pled</u>

Defendant argues that Plaintiff's fraud claim "must fail because . . . there has been no misstatement—material or otherwise." Def. Mot at 12. As an initial matter, it should be noted that Defendant impliedly acknowledges that Fed. R. Civ. P. 9(b)'s heightened pleading requirements do not apply to fraud claims brought under NY GBL §§ 349–350. *See Consumer Fin. Prot. Bureau v. RD Legal Funding, LLC*, 332 F. Supp. 3d 729, 768, 784 (S.D.N.Y. 2018). In support of its argument, Defendant does little more than reiterate its same unavailing claims as to why it believes that its Product is not misleadinly labeled: "[t]he only alleged representation regarding blueberry

---

[7] *See supra* note 2 and accompanying text.
[8] *See* Am. Compl. note 14 and accompanying text.

content wasd the alleged placard stating 'Blueberry.' Plaintiffs admits that the Blueberry Bagel in fact contains blueberries . . . Because there is no misrepresentation or false statement, there can be no fraud." Def. Mot. at 12.

Defendant further argues that Plaintiff fails to satisfy F.R.C.P. 9(b)'s heightened pleading requirements because he "has not alleged facts that give rise to a strong inference of fraudulent intent;" Plaintiff has merely alleged that Panera labeled a bagel containing blueberries with a placard stating 'Blueberry.'" *Id.* However, strong inference of fraudulent intent "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Plaintiff has adequately alleged that Defendant's intent to deceive may be inferred from the existence of its other genuine blueberry products, such as the Blueberry Muffin, and the fact that it is sold in close proximity to the Blueberry Bagel. Furthermore, the Product is sold under signage which states, "Food you can trust" and "we're committed to menu transparency" notwithstanding the lack of an ingredients statement being made available to consumers at Panera's point of sale. And the discrepancy between these different blueberry products sold by Panera provides this strong circumstantial evidence.

As to Plaintiff's reliance on Defendant's misrepresentation, this is a factual question to be reserved for a trier of fact, not adjudicated on a motion to dismiss, just like the question of deceptiveness to a reasonable consumer. *See MBIA Ins. Co. v. GMAC Mortg. LLC*, 914 N.Y.S.2d 604, 608 (Sup. Ct. 2010) ("Reasonable reliance is a fact-intensive inquiry, which should be reserved for a trier of fact.").

## IV. Plaintiff Has Standing under Article III to Seek Injunctive Relief

Defendant argues that Plaintiff lacks standing under Article III to pursue injunctive relief because Plaintiff "cannot rely on past injury but must instead show a likelihood that he or she will be injured in the future." Def. Mem. at 5. However, this argument ignores that "an injunction in connection with a class action is designed to afford protection of future consumers from the same fraud. It does this by permitting the plaintiff to sue on their behalf." *Belfiore v. Procter & Gamble Co.*, F. Supp. 3d 440, 445 (E.D.N.Y. 2014). To hold otherwise "denigrate[s] the New York consumer protection statute, designed as a major support of consumers who claim to have been cheated." *Id.*; *see also Delgado v. Ocwen Loan Servicing Company, LLC*, 2014 U.S. Dist. LEXIS 135758, 2014 WL 4773991, at *42 (E.D.N.Y. Sept. 23, 2014) ("Finding that Plaintiffs have no federal standing to enjoin a deceptive practice once they become aware of the scheme would eviscerate the intent of the California legislature in creating consumer protection statutes.") (internal quotation marks and citation omitted); *Ackerman v. Coca-Cola Co.*, 2013 U.S. Dist. LEXIS 184232, 2013 WL 7044866, at *56 n.23 (E.D.N.Y. July 17, 2013) ("[C]ourts have consistently held that plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer.  To hold otherwise would 'effectively bar any consumer who avoids the offending product from seeking injunctive relief.'") (quoting *Koehler v. Litehouse, Inc.*, 2012 U.S. Dist. LEXIS 176971, 2012 WL 6217635, at *6 (N.D. Cal. Dec. 13, 2012)).

Some have argued that the policy considerations behind state consumer protection laws must yield to the Constitution. But there is no conflict between the two. The Supreme Court has held that "[t]he standing inquiry focuses on whether the plaintiff is the proper party to bring this suit." *Raines v. Byrd*, 521 U.S. 811, 818 (1997).  This formulation thus presupposes that the proper

party *exists*: The reference is to *the* proper party, whomever that happens to be, not to *a* proper party, who might or might not exist. This is consistent with the reasoning of courts that have held injunctive relief to be appropriate in consumer fraud class actions: given the specific conundrum intrinsic to these cases—that anyone who becomes aware of the deception and so is positioned to bring a complaint is unlikely to be duped again—the usual application of the standing rule must be adjusted accordingly if there is ever to be a proper party, which the *Raines* formulation indicates there must be. *See Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 533–34 (N.D. Cal. 2012) ("As plaintiffs further note, were the Court to accept the suggestion that plaintiffs' mere recognition of the alleged deception operates to defeat standing for an injunction, then injunctive relief would never be available in false advertising cases, a wholly unrealistic result."); *Henderson v. Gruma Corp.*, 2011 U.S. Dist. LEXIS 41077, 2011 WL 1362188 at *7 (C.D. Cal. Apr. 11, 2011) ("If the Court were to construe Article III standing for FAL and UCL claims as narrowly as the Defendant advocates, federal courts would be precluded from enjoining false advertising under California consumer protection laws because a plaintiff who had been injured would always be deemed to avoid the cause of the injury thereafter ('once bitten, twice shy') and would never have Article III standing."); *Fortyune v. American Multi-Cinema, Inc.*, 2002 U.S. Dist. LEXIS 27960, 2002 WL 32985838, *7 (C.D. Cal. Oct. 22, 2002) ("If this Court rules otherwise [and does not find standing], like defendants would always be able to avoid enforcement of the ADA. This court is reluctant to embrace a rule of standing that would allow an alleged wrongdoer to evade the court's jurisdiction so long as he does not injure the same person twice.").

In the consumer fraud context, the proper party to request injunctive relief is the party that already has standing to request other forms of relief arising out of the same case or controversy. This is the *best conceivable* party given the very nature of the cause of action and the public interest.

Article III does not require more than this. The alternative is a state of affairs in which those who need and are entitled to injunctive relief are unable to act on that right while those who have the knowledge to do so are for this very reason legally disqualified from doing so. Plaintiff and the Class should thus have standing to seek injunctive relief under GBL §§ 349, 350, and 350-a(1), as they have standing to request other forms of relief under the same.

## **CONCLUSION**

For all the foregoing reasons, Defendant's Motion to Dismiss is meritless and should be denied.

Dated: June 28, 2019

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**

*/s/ C.K. Lee*
By:  C.K. Lee, Esq.

C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 28, 2019, true and correct copies of Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss Plaintiffs' Class Action Complaint were served on counsel of record via ECF and U.S. Mail.

*/s/ C.K. Lee*
C.K. Lee, Esq.