```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  3/30/2020
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                                                       :
JOSE IZQUIERDO, individually and on                    :
behalf of all others similarly situated,               :
                                                       :
                                    Plaintiff,         :        18-CV-12127 (VSB)
                                                       :
                  - against -                          :        **OPINION & ORDER**
                                                       :
                                                       :
PANERA BREAD CO., a/k/a ST. LOUIS                      :
BREAD CO.,                                             :
                                                       :
                                    Defendant.         :
                                                       :
-------------------------------------------------------X

Appearances:

Anne Melissa Seelig
C.K. Lee
Lee Litigation Group, PLLC
New York, NY
*Counsel for Plaintiffs*

Anne B. Sekel
Eileen Ridley
Nicole Michele Marschean
Foley & Lardner LLP
New York, NY
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

        Plaintiff Jose Izquierdo ("Plaintiff"), on behalf of himself and a putative class, brings this

action against Defendant Panera Bread Company, a/k/a St. Louis Bread Company ("Defendant"

or "Panera") asserting several state law claims related to the allegedly deceptive and fraudulent

sale of a "Blueberry Bagel."  Before me is Defendant's motion to dismiss the first amended class

action complaint for failure to state a claim.  Because Plaintiff has failed to allege any future

injury, Defendant's motion to dismiss Plaintiff's requests for injunctive relief for lack of standing is GRANTED.  Because Plaintiff has stated sufficient facts to make out claims of violations of N. Y. Gen. Bus. §§ 349, 350, and 350-a(1), and for fraud, Defendant's motion to dismiss those claims is DENIED.

## I.   <u>Factual Background</u>[1]

Plaintiff is a New York citizen who resides in the Bronx.  (FAC ¶ 15.)[2]  Defendant is a "national bakery/café chain" organized under the laws of Delaware with principal executive offices in St. Louis, Missouri.  (*Id.* ¶ 16.)

On August 8, 2018, Plaintiff visited a Panera store located at 452 5th Avenue, New York, New York 10018.  (*Id.* ¶ 15.)  He purchased a bagel ("the Bagel") that was "displayed in a basket on a wall behind the counter," affixed to which was a placard reading "'Blueberry,' along with the number of calories (340)" in each "Blueberry" bagel.  (*Id.* ¶ 19.)  The basket was displayed "alongside [Defendant's] other bagel varieties."  (*Id.*)  Above those baskets, Plaintiff alleges, was a sign reading "Food You Can Trust:  We're advocates for clean food.  We're committed to menu transparency.  We're dedicated to having a positive impact on the food system."  (*Id.* ¶ 20; *id.* Ex. B.)  The ingredient list for the Bagel "is not displayed in-store."  (*Id.* ¶ 21.)  Panera also sells a Blueberry Muffin, which contains "fresh blueberries" as the second-to-last ingredient and no imitation blueberries.  (*Id.* ¶¶ 43–44; *id.* Ex. E.)

---

[1] Unless otherwise noted, the following factual summary is drawn from the allegations of Plaintiff's First Amended Complaint and exhibits.  (Doc. 27.)  I assume Plaintiff's allegations to be true for purposes of this motion.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  However, my references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] "FAC" refers to Plaintiff's First Amended Complaint, filed on May 31, 2019.  (Doc. 27.)

Plaintiff supplies the following image of the Bagel:



(*Id.* Ex. A.)

Plaintiff alleges that he purchased the Bagel "reasonably relying on Defendant's representations that it was a genuine blueberry bagel," but that in fact the Bagel "contains only trace amounts of real blueberries" and a "far greater proportion of imitation blueberry ingredients." (*Id.* ¶¶ 15, 21.) "Even upon purchasing and closely inspecting the Product, a reasonable consumer cannot discern the imitation from the actual blueberry ingredients." (*Id.* ¶ 10.)

Plaintiff alleges that the ingredients list for the Bagel is as follows:

Enriched Flour (Wheat Flour, Malted Barley Flour, Niacin, Reduced Iron, Thiamine Mononitrate, Riboflavin, Folic Acid), Water, Blueberry Flavored Bites (Sugar, Enriched Wheat Flour [Wheat Flour, Niacin, Iron, Thiamine Mononitrate, Riboflavin, Folic Acid], Blueberry Solids, Sunflower Oil, Wheat Starch, Dextrose, Colored With Fruit Juice, Natural Flavor, Sodium Bicarbonate) [3], Brown Sugar, Infused Dried Blueberries (Wild Blueberries, Cane Sugar, Natural Flavor, Citric Acid, Sunflower Oil), Salt, Dough Improver (Malted Wheat Flour, Enriched Wheat Flour [Niacin, Reduced Iron, Thiamine Mononitrate, Riboflavin, Folic Acid], Inactivated Yeast, Acerola Extract, Fungal Enzymes), Yeast (Yeast, Sorbitan Monostearate, Ascorbic Acid).

---

[3] Plaintiff asserts that Blueberry Flavored Bites and Blueberry Solids are imitation blueberries. (*See* FAC ¶ 20; Pl.'s Opp. 5.)

(*Id.* ¶¶ 26–27; *id.* Ex. A.)  Plaintiff alleges that if he had "known that the [Bagel] in fact contains only trace amounts of blueberries, he would not have considered it a blueberry bagel and would not have purchased it, or would have paid significantly less for it.  (*Id.* ¶ 15.)  He further alleges that "[e]ven low-cost, supermarket-shelf blueberry bagels contain only real blueberry ingredients" and "[a] reasonable consumer would expect a blueberry bagel sold at a bakery-café that stresses its healthfulness and authenticity to contain more real blueberries than its low-cost, supermarket-shelf counterparts."  (*Id.* ¶¶ 33, 35.)

## II.   <u>Procedural History</u>

Plaintiff commenced this action by filing a complaint on December 21, 2018.  (Doc. 1.)  The case was then assigned to Judge Deborah A. Batts.  Defendant then requested and received two extensions of time to respond to the complaint.  (Docs. 7–11.)  On May 7, 2019, Defendant filed a motion to dismiss and supporting documents.  (Docs. 14–16.)

On May 31, 2019, Plaintiff filed his first amended complaint, with exhibits.  (Doc. 27.)  On June 14, 2019, Defendant filed a motion to dismiss the first amended complaint, along with a memorandum of law and declaration in support.  (Docs. 32 – 24.)  Plaintiff filed his memorandum of law in opposition on June 28, 2019, (Doc. 35), and Defendant filed its reply memorandum of law on July 5, 2019, (Doc. 36).  On February 20, 2020, this case was reassigned to me.

## III.   <u>Legal Standard</u>

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237. A "complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

### IV.   <u>Materials Considered</u>

As an initial matter, on this motion I consider only the first amended complaint and the exhibits attached thereto, which includes an image of the Bagel and ingredients list, a photograph of a Panera food display, as well as screen captures of various webpages. (FAC Exs. A–E.) Consistent with the black letter law, I decline to consider factual allegations and documents that are not contained in or attached to the First Amended Complaint, including Defendant's website as a whole because Defendant has not demonstrated that it is "integral to the complaint." *See Chambers*, 282 F.3d at 152. Specifically, I will not consider Defendant's factual allegations

about the prices of other bagels sold by Panera, or the Panera's webpage submitted that displays

these alleged prices.  (*See* Defs.' Mem. 2 n.3; Beer Decl.; *id.* Exs. A.)[4]  Although Plaintiff

provides an excerpt from Panera's website listing the ingredients in the Bagel, I do not find that

Plaintiff "relies [so] heavily upon its terms and effect" that its entire website is "integral to the

complaint."  *Chambers*, 282 F.3d at 152.  Defendant's request for me to consider the webpage is

further undermined by the fact that it does not provide a URL for the excerpted webpage that

would allow me to verify its authenticity and does not state on what date the webpage was

accessed.  (Def.'s Mem. 2 n.3; Beer Decl. ¶ 3; *id.* Ex. A.)  Even if the page provided is an

accurate reflect of Panera's website, the mere fact that it displayed certain bagel prices on some

date does not mean that that those prices were the ones in place at the time Plaintiff visited the

Panera location at 452 5th Avenue on August 8, 2018.

## V.      **Discussion**

Plaintiff brings this action on behalf of himself and "the New York class" of all other

New York purchasers of the Bagel.  (*Id.*)  He seeks damages and injunctive relief for violations

of N.Y. G.B.L. § 349, which prohibits deceptive acts and practices in the conduct of business,

and N.Y. G.B.L. § 350 and 350-A-1, which prohibits false advertising, and damages for common

law fraud.  Defendants move to dismiss all claims on the grounds that (1) Plaintiff lacks standing

to seek injunctive relief; (2) Plaintiff has failed to state a claim of violation of N.Y. G.B.L. §§

349, 350, and 350-a-1; and (3) Plaintiff has failed to state a claim of fraud.  I address each

possible ground for dismissal in turn.

---

[4] "Def.'s Mem." refers to Defendant's Memorandum of Law in Support of Defendant's Motion to Dismiss
Plaintiff's First Amended Class Action Complaint, filed on June 14, 2019.  (Doc. 33.)  "Beer Decl." refers to the
Declaration of Emily A. Beer in Support of Motion to dismiss, filed on June 14, 2019.  (Doc. 34.)

A.  *Standing to Seek Injunctive Relief*

1.  **Applicable Law**

To satisfy the requirements of standing under Article III of the Constitution, a plaintiff

must establish three elements:  "(1) the plaintiff must have suffered an injury in fact, *i.e.*, an

invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or

imminent, not conjectural or hypothetical; (2) there must be a causal connection between the

injury and the conduct complained of; and (3) it must be likely, as opposed to merely

speculative, that the injury will be redressed by a favorable decision."  *Nat'l Org. for Marriage,*

*Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S.

555, 560–61 (1992)).  "A plaintiff must demonstrate standing for each claim and form of relief

sought."  *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 564 (S.D.N.Y. 2016) (citing *Spiro*

*v. Healthport Technologies, LLC*, 73 F.Supp.3d 259, 270 (S.D.N.Y. 2014).  "There is no

exception to demonstrating future injury when the plaintiff is pursuing a class action."

*Buonasera*, 208 F. Supp. 3d at 564 (citing *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S.

26, 40 n.20 (1976)).  "[E]ach member of the class must have standing to assert her own claims

against the defendant," and "[f]or each claim asserted in a class action, there must be at least one

class representative (a named plaintiff or a lead plaintiff) with standing to assert that claim."

*Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 862 F. Supp. 2d 322, 331

(S.D.N.Y. 2012).

To demonstrate an injury in fact when seeking injunctive relief, "a plaintiff cannot rely

on a past injury alone," *Buonasera*, 208 F. Supp. 3d at 564 (quoting *City of Los Angeles v. Lyons*,

461 U.S. 95, 101 (1983)), but must establish "a 'real or immediate threat' of injury," *Nicosia v.*

*Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (quoting *Lyons*, 461 U.S. at 111–12).  "The

Supreme Court has repeatedly reiterated that threatened injury must be certainly impending to constitute injury in fact, and that allegations of possible future injury are not sufficient." *Daniel v. Tootsie Roll Indus.*, LLC, No. 17 CIV. 7541 (NRB), 2018 WL 3650015, at *6 (S.D.N.Y. Aug. 1, 2018) (quoting *Am. Civil Liberties Union v. Clapper*, 785 F.3d 787, 800 (2d Cir. 2015)).

### 2. Application

"In a deceptive business practices action under GBL §§ 349 and 350, the Second Circuit has determined that absent an intent to 'purchase the offending product in the future,' a plaintiff lacks standing to seek injunctive relief." *Yee Ting Lau v. Pret A Manger (USA) Ltd.*, No. 17-CV-5775 (LAK), 2018 WL 4682014, at *2 (S.D.N.Y. Sept. 28, 2018) (citing *Kommer v. Bayer Consumer Health*, 710 F. App'x 43, 44 (2d Cir. 2018) (summary order)).

As in *Kommer,* Plaintiff "has not shown that he is likely to be subjected to further injurious sales" of the Bagel because he "fail[s] to allege that he intends to [purchase the offending product] in the future." 710 F. App'x at 44. In fact, his "allegations show [his] resistance to engaging in such a commercial transaction again." *Yee Ting Lau*, 2018 WL 4682014, at *2. Specifically, Plaintiff alleges that if he "had [] known that the [Bagel] in fact contains only trace amounts of blueberries, he would not have considered it a blueberry bagel and would not have purchased it, or would have paid significantly less for it . . . [s]hould Plaintiff encounter the Product in the future, he could not rely on the truthfulness of Defendant's representations regarding the Product, absent corrective changes to the Product's ingredients." (FAC ¶ 15.) On the face of Plaintiff's own allegations, he would not have bought the Bagel if he had known its composition; one may reasonably infer that now that he is aware of the Bagel's ingredients, he will not purchase it again. Therefore, Plaintiff lacks standing to seek injunctive relief. *See In re Amla Litig.*, 320 F. Supp. 3d 578, 593 (S.D.N.Y. 2018) (plaintiffs lacked

standing to seek injunctive relief under N.Y. G.B.L. § 349 where they "adduce[d] no evidence that they are likely to repurchase the product, and indeed allege[d] that they would not have purchased the product in the first place had they known of its alleged defects").  Because Plaintiff does not individually have standing to seek injunctive relief, he also lacks standing to seek injunctive relief on behalf of the class.  *Buonasera*, 208 F. Supp. 3d at 564 (citing *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)).

Plaintiff does not address *Kommer*, instead basing his argument in favor of standing, (Pl.'s Opp. 18–20),[5] on a line of Eastern District of New York cases that "follow[] the Ninth Circuit's lead," *Yee Ting Lau*, 2018 WL 4682014, at *2,  in holding "that plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer, because to hold otherwise would effectively bar any consumer who avoids the offending product from seeking injunctive relief," *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) (internal quotation marks omitted). These decisions predate the Second Circuit's holding in *Kommer*, and like Judge Kaplan in *Yee Ting Lau*, I am "not persuaded that plaintiff[] ha[s] demonstrated injury deserving of a departure from *Lujan*'s rules and the Second Circuit's clear inclination to decline to find standing in circumstances such as these."  2018 WL 4682014, at *2.

---

[5] "Pl.'s Opp." refers to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss First Amended Complaint, filed on June 28, 2019.  (Doc. 35.)  I note that Defendant did not cite *Kommer* until reply. (Def.'s Reply 2.)

"Def.'s. Reply" refers to Defendant's Reply Memorandum of Law in Further Support of Defendant's Motion to Dismiss Plaintiff's First Amended Class Action Complaint, filed on July 5, 2019.  (Doc. 36.)

### B.   *N.Y. Gen. Bus. L. §§ 349, 350, 350a-(1)*

#### 1.   Applicable Law

The New York General Business Law prohibits "[d]eceptive acts or practices" and "false advertising" "in the conduct of any business, trade or commerce or in the furnishing of any service."  N.Y. Gen. Bus. L. §§ 349, 350.  "False advertising" includes "advertising, including labeling, of a commodity, . . . if [it] is misleading in a material respect."  *Id.* § 350-a(1).

To state a claim under either section, a plaintiff must plead facts to show that "(1) the challenged transaction was 'consumer-oriented'; (2) defendant engaged in deceptive or materially misleading acts or practices; and (3) plaintiff was injured by reason of defendant's deceptive or misleading conduct."  *Farina v. Metro. Transp. Auth.*, 409 F. Supp. 3d 173, 213 (S.D.N.Y. 2019) (quoting *Denenberg v. Rosen*, 897 N.Y.S.2d 391, 395 (1st Dep't 2010)); *see also Wurtzburger v. Kentucky Fried Chicken,* No. 16-CV-08186 (NSR), 2017 WL 6416296, at *2 (S.D.N.Y. Dec. 13, 2017) ("Bare recitation of the elements of a cause of action under GBL §§ 349 and 350, meaning mere conclusory statements, is insufficient to rise to the level of a plausible claim.").

#### 2.   Application

Defendant does not dispute, and therefore concedes for the purposes of this motion, that the conduct alleged here—the labeling of the Bagel—was "consumer-oriented."  (Def.'s Mem. 6.)  Instead, Defendant argues—with regard to the second and third prongs—that:  (1) Plaintiff has alleged no misrepresentation and that no reasonable consumer was likely to be misled by Defendant's alleged conduct, and (2) that Plaintiff has not sufficiently alleged that he was injured.

a.   Materially Misleading

"Whether a representation or an omission, the deceptive practice must be likely to mislead a reasonable consumer acting reasonably under the circumstances." *Farina*, 409 F. Supp. 3d at 213 (quoting *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000)).  Courts "view each allegedly misleading statement in light of its context on the product label or advertisement as a whole." *Wurtzburger*, 2017 WL 6416296, at *3; *see also Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018) ("In determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial.").  This is an "objective test" that "may be determined as a matter of law or fact (as individual cases require)." *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 287 (S.D.N.Y. 2014) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995)).

Viewing the label of the Bagel in context and taking Plaintiff's allegations as true, I find that Plaintiff has plausibly alleged that a reasonable consumer is likely to be misled into believing that the Bagel's blueberry content consists solely of real blueberries, when in fact the Bagel contains primarily imitation blueberries with a lesser quantity of real blueberries.[6] Plaintiff alleges that the Bagel is advertised in stores with a placard reading "Blueberry" and online as a "Blueberry Bagel," and that it appears to contain discrete pieces of fruit scattered throughout the bagel.  (FAC ¶ 19; *id.* Ex. A).  It is plausible that a reasonable consumer would believe that these visible pieces are real blueberries, in light of the placard on the basket and their normal expectations of blueberry baked goods.  (*See* FAC Ex. A; *id.* ¶¶ 22–25, 31, 42 ("Even

---

[6] Plaintiff alleges that "Wild Blueberries, a sub-ingredient of the "Infused Dried Blueberries," are the only real blueberry ingredient in the Bagel, and that the "Blueberry Flavored Bites" are imitation blueberries, notwithstanding the fact that the ingredients list states that the Blueberry Flavored Bites contain "Blueberry Solids." (Compl. ¶¶ 27– 28.)  I take this allegation as true at this stage.  To the extent that Defendant asserts that the Blueberry Solids are real blueberries, (*see, e.g.*, Def.'s Mem. 3), that is a question of fact not properly resolved on a motion to dismiss.

upon purchasing and closely inspecting the Product, a reasonable consumer cannot discern the imitation from the actual blueberry ingredients").)  In addition, the following facts heighten the risk of confusion:  (1) the Bagel appears under a sign advertising Defendant's commitment to "clean food" and "menu transparency," (FAC ¶ 46; *id.* Ex. B); and (2) the Bagel is sold alongside a Blueberry Muffin that contains only real blueberries and no imitation blueberries, (*id.* Ex. E).

Defendant argues that labeling the Bagel with a sign reading "Blueberry" is not materially misleading because (1) the bagel does, in fact, contain blueberries, and (2) the ingredients list is readily available.  (Def.'s Mem. 6–10.)  Both of these arguments fail.

The Second Circuit has found it materially misleading to suggest a product contains a greater proportion of a preferred ingredient than it actually does, even where there is a visible ingredients list that states the correct composition of the food.  *See Mantikas v. Kellogg Co.*, 910 F.3d 633, 639 (2d Cir. 2018).  *Mantikas* concerned the packaging of Cheez-Its crackers, whose boxes were conspicuously labeled "WHOLE GRAIN" and "MADE WITH WHOLE GRAIN," but which were primarily composed of enriched white flour and a small amount of whole grain flour.  *Id.* at 636.  The front panel set forth the number of grams of whole grain per serving and the actual composition of the crackers was listed in the Nutrition Facts panel on the box.  *See id.* The Second Circuit found that this labeling was materially misleading "because [it] falsely impl[ied] that the grain content is entirely or at least predominantly whole grain, whereas in fact, the grain component consisting of enriched white flour substantially exceeds the whole grain portion."  *Id.* at 637.  The Nutrition Facts panel did not "render [p]laintiffs' allegations of deception implausible"; rather, the Court concluded, "a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large bold type on the front of the box."  *Id.*

12

Prior to *Mantikas*, several district courts in this Circuit found claims about similar packaging potentially misleading enough to survive a motion to dismiss.  *See Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489 (KMK), 2016 WL 4367991, at *15 (S.D.N.Y. Aug. 12, 2016) (plaintiff stated a claim with respect to dog treats "marketed under a heavily branded bacon-oriented theme" that contained a small amount of bacon and bacon fat but were primarily composed of "non-meat fillers"); *Albert v. Blue Diamond Growers*, 151 F. Supp. 3d 412 (S.D.N.Y. 2015) (consumers stated §§ 349 and 350 claims regarding packaging of almond milk that suggested the product "contained a significant amount of almonds," and were a "heart healthy food" when in fact they "contained only 2% of almonds"); *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 479 (S.D.N.Y. 2014) (packaging of personal care products that used the word "active naturals" was misleading where product contained mostly synthetic ingredients and some natural ingredients); *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG), 2010 WL 2925955, at *15–16 (E.D.N.Y. July 21, 2010) (packaging of "vitaminwater" beverage was potentially misleading where it contained numerous statements suggesting the product was composed only of vitamins and water and that it was healthy, when in fact although the product did contain vitamins and water, it also contained a large amount of sugar, even though nutrition facts panel listed all ingredients).

Defendant's labeling and advertising related to the "blueberry" composition of the Bagel or to the health of its products or transparency of its ingredients lists is considerably less extensive than the labeling and advertising at issue in the cases cited above, making the determination of whether or not the advertising and labeling here could be considered materially misleading a close question.  Nevertheless, at this stage, I find it plausible that, as in *Mantikas*, the "Blueberry" label, in context, "falsely impl[ies] that the [blueberry] content is entirely or at

least predominantly [blueberries] whereas in fact," taking Plaintiff's allegations as true, the

imitation blueberry component exceeds the real blueberry component.  *Id.*  This conclusion is

supported by the fact that unlike the above cases—in which even the presence of accurate

Nutrition Facts did not overcome misleading labeling—there are no allegations that a customer

purchasing the Bagel in-store would have ready access to an ingredients list prior to making a

purchase.

    *Solak v. Hain Celestial Grp., Inc.*, on which Defendant principally relies, is not

controlling and is distinguishable.  3:17-CV-0704 (LEK/DEP), 2018 WL 1870474 (N.D.N.Y.

Apr. 17, 2018).  In *Solak*, which predates *Mantikas*, Judge Lawrence E. Kahn in the Northern

District of New York found that it was not misleading for a product package to bear the name

"Garden Veggie Straws," a caption describing the product as a "vegetable and potato snack"

made from "garden grown potatoes" and "ripe vegetables," and images of fresh vegetables,

where the product's top five ingredients by weight were "potato starch, potato flour, corn starch,

tomato paste, and spinach powder."  *Id.*, at *1.  Judge Kahn found that these descriptions were

not misleading as a matter of law because (1) they were "factually accurate," given that the

product was in fact primarily made up of vegetable products, and (2) the product was a processed

snack food that no "consumer could honestly conclude . . . contain[ed] any non-processed

vegetables."  *Id.*, at *4–5.  The Veggie Straws did not contain any imitation vegetables.  *Id.*, at

*1.

    In contrast, the Bagel is alleged to contain imitation blueberry content that exceeds the

real blueberry content, and is the type of food that a reasonable customer could expect to contain

real blueberries.  *Cf. Mantikas*, 910 F.3d at 637–38 (distinguishing similar California district

court decisions on the grounds that (1) they concerned claims that product labels were "deceptive

14

because [they] led consumers to believe, incorrectly" that they "contained a significant quantity of a particular ingredient," rather than because they implied that the product contained a certain ratio of a particular ingredient, and (2) because "the plaintiffs [in those cases] alleged they were misled about the quantity of an ingredient that was obviously not the products' primary ingredient").

In addition, in reaching his conclusion, Judge Kahn relied heavily on the presence of an ingredients list on the package because it "resolve[d] once and for all any ambiguity as to what [a consumer] should expect the bag to contain." *Id.*, at *6. Since then, *Mantikas* has made clear that "a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth" elsewhere on the packaging. *See* 910 F.3d at 637.

Accordingly, I cannot say as a matter of law that no reasonable consumer would be misled by Defendant's labeling of the Bagel.

b. Injury

I also find that Plaintiff has adequately—albeit just barely—pled the "injury" element of his claims by alleging that Defendant's Bagel had "significantly less value than it warranted." (FAC ¶ 51.) Specifically, Plaintiff alleges that he purchased the Bagel for $ 1.39 believing it contained "a non-negligible quantity of blueberries," which he believed to be healthy, but that because it only contains "trace amounts of real blueberry ingredients," it was "inferior to the [the product] he believed he had bargained for." (FAC ¶¶ 7, 38.) He further alleges that "even low-cost supermarket-shelf blueberry bagels contain only real blueberry ingredients," and that "a reasonable consumer would expect a blueberry bagel sold at a bakery-café that stresses its

healthfulness and authenticity to contain more real blueberries" than its supermarket

counterparts.  (*Id.* ¶¶ 33, 35.)

      Defendant contends that Plaintiff has failed to plead "a cognizable actual injury that is

separate from Defendant's allegedly deceptive conduct."  (Def.'s Opp. 9.)  I disagree.

In *Small v. Lorillard Tobacco Co.*, the New York Court of Appeals held that a plaintiff bringing

a claim under G.B.L. § 349 may not "set[] forth deception as both act and injury," such as where

he relies solely on the allegation that he bought "a product that [he] would not have purchased,

absent a manufacturer's deceptive commercial practices."  94 N.Y.2d 43, 56 (1999).  A plaintiff,

may, however, "allege that, on account of a materially misleading practice, []he purchased a

product and did not receive the full value of h[is] purchase."  *Orlander*, 802 F.3d at 302; *see also*

*Small*, 94 N.Y.3d at 56 n.56 ("[A] plaintiff might have a claim where a distributor asserts that its

bottled water is from a pure and pristine mountain stream while in reality, it was only tap

water.").  One way to demonstrate this—but not the only way—is to allege payment of a "price

premium," whereby a plaintiff pays more than she would have but for the deceptive

practice.  *Orlander*, 802 F.3d at 302.  In contrast, courts have repeatedly rejected as

impermissible the theories of injury set forth in a raft of "outlet store" cases, in which plaintiffs

have taken issue with misleading price tags that falsely suggest a good has been heavily marked

down, but fatally did not allege that these price tags diminished the value of the goods in any

way.  *See, e.g.*, *DaCorta v. AM Retail Grp., Inc.*, No. 16-CV-01748 (NSR), 2018 WL 557909, at

*7 (S.D.N.Y. Jan. 23, 2018); *Belcastro v. Burberry Ltd.*, No. 16-CV-1080 (VEC), 2017 WL

5991782, at *3 (S.D.N.Y. Dec. 1, 2017); *Braynina v. TJX Cos., Inc.*, No. 15-CV-5897 (KPF),

2016 WL 5374134, at *10 (S.D.N.Y. Sept. 26, 2016).  These cases are not analogous to the facts

here since the consumers in those cases based their purchases on their perception they were getting a deal, *i.e.*, a more expensive product for a reduced price.

Within this framework, Plaintiff's contention that the Bagel "had significantly less value than it warranted," (FAC ¶ 51), constitutes a "classic price premium theory of injury" that is "plausible and cognizable." *Irvine v. Kate Spade and Company*, No. 16-cv-7300, 2017 WL 4326538, at *5 (S.D.N.Y. Sep. 28, 2017) (injury sufficiently pled where plaintiffs alleged that "the goods they purchased at the Kate Spade outlets were worth 'less than' [] the prices . . . that they paid for them"). There is no requirement that Plaintiff specify the exact amount of the price premium that he paid, or a comparable product, as Defendant seems to suggests he must, (*see* Def.'s Mem. 10), and numerous courts have found similar allegations to be adequate. *See Quiroz v. Beaverton Foods*, Inc., 17-CV-7348 (NGG) (JO), 2019 WL 1473088, at *9 (E.D.N.Y. Mar. 31, 2019) ("Defendant denied [plaintiff and the putative class] the full benefit of their bargains" when "[plaintiff] paid money for a Product that was represented to them as preservative-free, and then received a Product that was preservative-laden and had significantly less value for them."); *In re Amla Litig.*, 328 F.R.D. 127, 135 (S.D.N.Y. 2018) ("[P]laintiffs paid more than they should have because of deceptive marketing"); *Ebin v. Kangadis Food Inc.*, No. 13 Civ. 2311(JSR), 2013 WL 6504547, at *5 (S.D.N.Y. Dec. 11, 2013) (plaintiffs alleged that defendant sold product labeled "100% Pure Olive Oil" that actually contained oil made from olive remains, an inferior product, on the ground that "the deception is the false and misleading label, and the injury is the purchase price.").

Defendant argues that Plaintiff's price premium theory fails because every Panera bagel in Manhattan sells for the same price. (Def.'s Mem. 10.) I reject this argument because (1) it relies on an allegation not stated on the face of the First Amended Complaint or exhibits attached

17

thereto, which I may not consider (*see supra*, Part IV); and (2) it assumes that the appropriate comparator products are other bagels sold by Panera, when in actuality Plaintiff compares the Bagel to other blueberry bagels, which he alleges are "low-cost" yet contain "only real blueberry ingredients," (FAC ¶ 33).

*Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-04697 (CM), 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016), invoked by Defendant, (Def.'s Mem. 10), is distinguishable.  There, the court rejected a conclusory price premium theory where plaintiffs alleged that they "receiv[ed] less Candy than they believed they bargained for," on the ground that "[p]laintiffs [had] not alleged that they paid a higher price for the [product] than they otherwise would have, absent deceptive acts."  *Id.*, at *7.  Here, however, although Plaintiff's First Amended Complaint is somewhat repetitive and disorganized, he does allege that he "would have paid significantly less for" the Bagel if he had known its composition, (FAC ¶¶ 15, 50), and that he assumed the Bagel was higher quality than "low-cost supermarket alternatives," (*id.* ¶ 33), giving rise to the reasonable inference that the Bagel was pricier than those supermarket bagels.  I also note that at least three district courts in this Circuit have disagreed with the holding of *Izquierdo* because it "contradicts the weight of the law in this Circuit . . . [c]ourts routinely allow complaints that lack allegations of both cheaper and exactly comparable products to survive motions to dismiss."  *Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 69 (E.D.N.Y. 2017); *see also In re Amla Litig.*, 328 F.R.D. at 136 n.7; *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 192 (E.D.N.Y. 2018).

Accordingly, because Plaintiff has adequately set forth a materially misleading statement and injury in fact, Defendant's motion to dismiss his claims under §§ 349, 350, and 350-a(1) is denied.

## C.     *Fraud*

To state a claim for common law fraud under New York law, a plaintiff must allege facts showing:  "[1] a misrepresentation or a material omission of fact which was false and known to be false by defendant, [2] made for the purpose of inducing the other party to rely upon it, [3] justifiable reliance of the other party on the misrepresentation or material omission, and [4] injury."  *Premium Mortg. Corp. v. Equifax, Inc*., 583 F.3d 103, 108 (2d Cir. 2009) (quoting *Lama Holding Co. v. Smith Barney Inc*., 668 N.E.2d 1370, 1373 (N.Y. 1996)).

In federal court, a party alleging fraud must "state with particularity the circumstances constituting fraud or malice," Fed. R. Civ. P. 9(b), and allege facts "that give rise to a strong inference of fraudulent intent, *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006).  A strong inference of fraudulent intent may be established either "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *Id.* at 290–91 (quoting *Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).  "An inference is 'strong' if it is 'cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'"  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 176–77 (2d Cir. 2015) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 310 (2007)).  "The inquiry is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard."  *Tellabs*, 551 U.S. at 323.  Ultimately, "[t]he key purpose of these requirements is to 'inform each defendant of the nature of its alleged participation in the fraud.'"  *Mahoney v. Endo Health Sols., Inc.*, No. 15CV9841(DLC), 2016 WL 3951185, at *10 (S.D.N.Y. July 20, 2016) (quoting *Loreley Fin.*, 797 F.3d at 172).

As with his §§ 349 and 350 claims, Plaintiff has just barely alleged a plausible claim of fraud.  First, despite Defendant's argument that Plaintiff has identified no misrepresentation, I find that in light of the appearance of the Bagel, consumer expectations about blueberry bagels, and Defendant's own branding, calling the Bagel a "Blueberry" bagel was misleading because to an ordinary consumer, it appears to contain bits of blueberries, but in fact contains more imitation blueberry content than real blueberry content and the two components cannot be visually distinguished from each other.

Second, I find that Plaintiff has set forth with particularity allegations suggesting "conscious misbehavior or recklessness," including:  (1) Defendant knew the Bagel's true composition, as evidenced by its publication of the ingredient list; (2) Defendant produced the Bagel in such a way that the imitation blueberries are indistinguishable from the real blueberries; (3) Defendant purposely advertises "menu transparency" and its "clean" food; (3) Defendant is aware of consumer beliefs about the healthful qualities of blueberries; and (4) Defendant sought to capitalize on those beliefs and its branding to sell more Bagels by calling it a Blueberry Bagel. *See Gerber Prods. Co.,* 262 F. Supp. 3d at 73 (plaintiff pled conscious misbehavior or recklessness by alleging that defendant was familiar with an empirical study that directly contradicted the statement made on their product's label and that the FDA had informed the defendant that its label was misleading); *Mahoney*, 2016 WL 3951185, at *10 (S.D.N.Y. July 20, 2016) (strong inference of fraudulent intent where defendants allegedly knew that the fluoride concentration of vitamin tablets manufactured and distributed by them was lower than the concentration suggested by the packaging); *In re Ford Fusion & C-Max Fuel Econ. Litig.*, No. 13-MD-2450 KMK, 2015 WL 7018369, at *35 (S.D.N.Y. Nov. 12, 2015) (fraudulent intent pled by allegations of "facts showing a motive for committing fraud and a clear opportunity for doing

so," *i.e.*, allegations that defendant "was lagging in the hybrid market and sought to improve its positioning by advertising improved fuel economy in its hybrid vehicles" and that defendant therefore knowingly misstated its new hybrid sedan's fuel economy in advertisements); *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 473 (E.D.N.Y. 2013) (fraudulent intent pled by allegations that defendants knew there was a "lack of supporting scientific evidence for [their] claims," a scientific study disputing several of the defendant's principal representations, and FTC settlements in cases involving similar allegations of fraudulent misrepresentation, and that the defendant profited from its misleading advertising tactics).

Unlike in the above cases, Plaintiff has not pled any facts suggesting that Defendant knew consumers were likely to be misled, and certain of Plaintiff's allegations suggest an opposing inference of benign intent, such as the fact that the ingredients list is publicly available. Nevertheless, considering the totality of the circumstances, I find that the inference of fraudulent intent is at least as strong as any other inference, and therefore sufficient to state a claim for fraud.

Accordingly, Defendant's motion to dismiss Plaintiff's fraud claim is denied.

## VI.  <u>Conclusion</u>

For the foregoing reasons, it is hereby:

ORDERED that Defendant's motion is GRANTED in part and DENIED in part. Defendant's motion to dismiss Plaintiff's requests for injunctive relief on behalf of himself and the putative class is GRANTED.  Defendant's motion to dismiss Plaintiff's claims of violations of N.Y. Gen. Bus. L. §§ 349, 350, and 350-a(1) is DENIED.

IT IS FURTHER ORDERED that Defendant shall file and serve an answer to the First

Amended Complaint within thirty (30) days of this Opinion & Order.

SO ORDERED.

Dated: March 30, 2020
      New York, New York

Vernon S. Broderick
United States District Judge